UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOSEPH SROUR,

        Plaintiff,      Case No.: 22 Civ. 3

   -against-

              **COMPLAINT**

NEW YORK CITY, New York,
KEECHANT SEWELL, in her Official
Capacity as NYPD Police Commissioner,

        Defendants.
------------------------------------------------------x

   Plaintiff, JOSEPH SROUR, by and through his attorneys, states his complaint against

Defendants as follows:

## NATURE OF THE ACTION

   1.  This is an action for compensatory, declaratory and injunctive relief, to include

presumed monetary damages in at least a nominal amount, costs, disbursements, and reasonable

statutory attorney's fees pursuant to 42 U.S.C. § 1988, for continuing and irreparable harm to

Plaintiff and all similarly situated individuals residing New York City arising from violations to

their constitutional rights as protected by the Second Amendment.

   2.  This action seeks a declaration that (i) New York City's discretionary and

permissive licensing of handguns under 38 RCNY 5; and rifles and shotguns under 38 RCNY 3;

and New York City Administrative Code 10-303 violate the Second Amendment facially and as

applied to Plaintiff.; (ii) 38 RCNY 3-03(a), (e), (h), and (n) violate the Second Amendment facially

and as applied to Plaintiff; (iii) 38 RCNY 5-10(a), (e), (h), and (n) violate the Second Amendment

facially and as applied to Plaintiff; (iv) New York City Administrative Code 10-303(2) and (9)

violate the Second Amendment facially and as applied to Plaintiff; (v) New York City

Administrative Code 10-310 violates the Second Amendment facially and as applied to Plaintiff by criminalizing the possession of rifles, shotguns, and ammunition; and (vi) 38 RCNY 3-03(a), (e), (h), and (n) and 38 RCNY 3-03(a), (e), (h), and (n), and New York City Administrative Code 10-303(2) and (9) are null and void as preempted by New York State statutes, including Penal Law § 265.00, *et seq.* and § 400.00, *et seq.*, which preempt the field of firearm regulation.

3.      This action further seeks to permanently enjoin Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 3-03(a), (e), (h), and (n); 38 RCNY 5-10(a), (e), (h), and (n); and New York City Administrative Code 10-303(2), (9); and 10-310 against individuals, like Plaintiff, who have no longstanding, historically established prohibitors to the purchase, possession, receipt and/or ownership of handguns, rifles, and shotguns.

4.      New York City's implementation and enforcement of a discretionary licensing scheme for all firearms -  handguns, rifles, and shotguns - violates the preexisting individual right of non-prohibited individuals like Plaintiff to self-defense and bans the free exercise of the right to and carry weapons for self-defense, as guaranteed by the Second Amendment.

5.      By requiring the City's permission before a non-prohibited person may possess handguns, rifles and/or shotguns, New York City violates the Second Amendment.

6.      By allowing the discretionary denial of the exercise of such rights based on factors with no longstanding, historical basis as a disqualifier to firearm possession, New York City violates the Second Amendment.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331, § 1343, § 2201, § 2202 and 42 U.S.C. § 1983 and § 1988. Venue lies in this Court

pursuant to 28 U.S.C. § 1391.

## PARTIES

8.      Plaintiff, Joseph Srour, is a natural person, a United States citizen, and a resident

of Brooklyn, New York City, New York.

9.      Defendant, New York City, New York is a municipal corporate subdivision of the

State of New York duly existing by reason of and pursuant to the laws of the State.

10.      Defendant, Keechant Sewell, is the New York City Police Commissioner. In that

capacity, Commissioner Sewell is the statutory handgun licensing officer for the five boroughs

that comprise New York City. Commissioner Sewell implements his licensing authority through

the NYPD License Division.

## STATEMENT OF LAW

### *The Second Amendment*

11.      The Second Amendment to the United States Constitution provides: "A well

regulated Militia being necessary to the security of a free State, the right of the people to keep

and bear Arms shall not be infringed."

12.      The Second Amendment does not *bestow* any rights to the individual to possess

and carry weapons to protect himself; it *prohibits the government* from infringing upon the basic,

fundamental right of the individual to keep and bear arms for self-defense in the event of a

violent confrontation. *District  of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v.*

*Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S.  (2016).

13.     "Individual self-defense is the central component of the Second Amendment right." *McDonald v City of Chicago*, 561 U.S. at 767, citing, *District of Columbia v. Heller*, 554 U.S. 570, 599 (internal quotations omitted). The Second Amendment protects the core right of the individual to self-protection. *District of Columbia v. Heller*, 554 U.S. at 595-599, 628.

14.     The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty". *McDonald v City of Chicago*, 561 U.S. 742, 768 (2010).

15.     The right of law-abiding responsible citizens to use arms in the defense of hearth and home is a fundamental right protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

16.     Second Amendment guarantees are at their zenith within the home. *Kachalsky v County of Westchester*, 701 F3d 81, 89 (2d Cir 2012) citing, *Heller*, 554 U.S. at 628-29.

17.     The Second Amendment's protections are fully applicable to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, supra.

***New York Statutory Scheme for Lawful Handgun Possession***

18.      New York Penal Law § 400, *et seq.* is the enabling statute regulating the possession and licensing of firearms in the State of New York.

19.     Penal Law § 400, *et seq.* preempts any and all local laws, codes, and regulations relating to firearm possession and licensing. The comprehensive and detailed regulatory language and scheme of § 400.00 demonstrates the legislature's intent to preempt the field of firearm regulation in the state. See, *Matter of Chwick v Mulvey*, 81 AD3d 161, 163 (2d Dept 2010) (holding that Penal Law § 400 preempts Nassau County's local ordinance criminalizing the possession of certain types of handguns because where, as here, the state "legislature

4

demonstrate[s] its intent to preempt the field, all local ordinances are preempted regardless of whether they actually conflict with the state law").

20.     Where an individual has no prohibitors to the possession of firearms, New York State Penal Law § 400.00(2) provides, "A license for a pistol or revolver, other than an assault weapon or a disguised gun, ***shall be issued*** to (a) have and possess in his dwelling by a householder." (emphasis added).

21.     Under Penal Law § 400.00(1), "No license shall be issued or renewed except for an applicant who meets the eligibility requirements of (a) – (n), which include for example [in the negative] an applicant who does not have a conviction for a felony or serious offense; is not an unlawful user of or addicted to any controlled substances; is not a fugitive from justice; has not been dishonorably discharged from the military; has not been adjudicated mentally defective or involuntarily committed to a mental institution; who has not had a license revoked or who is not under a suspension or ineligibility order issued related to an Order of Protection; who has not had a guardian appointed for them as a result of mental incapacity (and the like); and "(n) concerning whom no good cause exists for the denial of the license".

22.     Similarly, federal law prohibits possession of firearms by individuals who have the same infirmities: dishonorably discharged from the military; felony conviction; misdemeanor conviction for domestic violence; fugitive from justice; unlawful user of or addicted to any controlled substance; is subject to a Court Order of Protection; and *inter alia,* has been adjudicated as a mental defective or who has been committed to a mental institution. See, 18 U.S.C. 922(g).

23.    In *District of Columbia v. Heller*, 554 U.S. at 627 n.26, the Supreme Court recognized that "laws prohibiting the exercise of the right to bear arms by felons and the mentally ill are 'presumptively lawful'".

24.    A *conviction* of a felony or serious offense is the result of a plea of guilty or a trial on the merits of the charge; an *adjudication* as a mental defective results from a formal court process; a dishonorable discharge from the military occurs after a court-martial proceeding; having a guardian *appointed* by the court as a result of a formal hearing; being subject to a court's Order of Protection (which, though issuable *ex parte* can be immediately challenged under the Family Court Act and/or Criminal Procedure Law depending on the jurisdiction of the issuing court).

25.    None of the enumerated prohibitors to handgun possession – state or federal - are based on a mere accusation without any subsequent judicial process adjudicating the underlying statutory infirmity.

26.    Neither the text and history of the Second Amendment, nor federal law, prohibits or contemplates the prohibition of, firearm possession by individuals based on an arrest, dismissed charges, petty summonses, or traffic infractions.

***State Regulation of Firearms Does not Reduce the Second Amendment to a "Privilege"***

27.    Throughout the State of New York, the possession of a handgun requires the issuance of a pistol license.

28.    A non-prohibited person who possesses a handgun in New York State, loaded or unloaded, without having been issued a handgun license is subject to criminal prosecution, including incarceration, fines, and the loss of the right to possess firearms in the future.

29.     A non-prohibited person who possesses a handgun, rifle, or shotgun in any of the 5 boroughs of New York City, loaded or unloaded, without having been issued a license to possess such firearm by the NYPD, is subject to criminal prosecution, including incarceration, fines, and the loss of the right to possess firearms in the future. Penal Law § 265.00, *et seq.*; New York City Admin. Code 10-310.

***The Ability of the States to Regulate Firearms Does Not Reduce the Right to a 'Privilege'***

30.     While the courts have recognized the states' authority to regulate firearms within the state, New York State's requirement that handguns be licensed for possession one's residence does not reduce the right to possess a handgun in the home to a mere 'privilege'. See, e.g., *United States v Laurent*, 861 F Supp 2d 71, 100 (EDNY 2011) citing, *United States v. Barton*, 633 F.3d 168, 170-71 (3d Cir. 2011) ("At the 'core' of the Second Amendment is the right of law-abiding, responsible citizens to use arms in defense of hearth and home."); *Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) ("there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home").

31.     Denial of an application for a license to possess a handgun, rifle and/or shotgun implicates an enumerated and cognizable Constitutional right falling within the scope of Second Amendment protections. See, *Heller*, 554 US 570 (2008)*.* The right to use handguns for the purpose of self-defense in the home falls within the scope of Second Amendment protections. *Id.*

32.     Strict scrutiny is warranted where the government burdens a fundamental, core right to self-defense in the home by a law-abiding citizen. *Kachalsky v Cacace*, 817 F Supp 2d 235, 268 (SDNY 2011) (internal citations omitted) (applying intermediate scrutiny to §400 concealed carry provisions, while the court simultaneously noted that Penal Law § 400.00(2)

*requires* pistol permits to be issued to eligible individuals for home possession - "shall be issued

to . . . have and possess in his dwelling by a householder".).

### 38 RCNY 5-10: Grounds for Denial of Handgun License

33.     Handguns are the most common, and the preferred modality and means of self-

protection in the home. *District of Columbia v Heller*, 554 U.S. at 628, citing, *Parker v District*

*of Columbia*, 375 US App DC 140, 169, 478 F3d 370, 400 (2007).

34.     38 RCNY 5-10, entitled "Grounds for Denial of Handgun License", provides:

"In addition to other bases for disqualification pursuant to federal, state, and
local law and this chapter, an application for a handgun license may be denied
where it is determined that an applicant lacks good moral character or that other
good cause exists for denial, pursuant to New York State Penal Law § 400.00
(1). Such a determination shall be made based upon consideration of the
following factors:

(a)  The applicant has been arrested, indicted or convicted for a crime or
violation except minor traffic violations, in any federal, state or local
jurisdiction.

 (b)  The applicant has been other than honorably discharged from the Armed
Forces of this country.

(c)  The applicant has or is reasonably believed to have a disability or condition
that may affect the ability to safely possess or use a handgun, including but not
limited to alcoholism, drug use or mental illness.

(d)  The applicant is or has been an unlawful user of, or addicted to, a controlled
substance or marijuana.

(e)  The applicant made a false statement on her/his application, or failed to
disclose her/his complete arrest history, including sealed arrests. Sealed arrests
are made available to the License Division pursuant to Article 160 of the
Criminal Procedure Law when an application has been made for a license to
possess a gun.

(f)  The applicant is the subject of an order of protection or a temporary order
of protection.

 (g)  The applicant has a history of one or more incidents of domestic violence.

(h)  The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.

(i)  The applicant has failed to comply with federal, state or local law or with Police Department rules governing possession and use of firearms, rifles, shotguns or ammunition.

(j)  The applicant has been terminated from employment under circumstances that demonstrate lack of good judgment or lack of good moral character.

(k)  The applicant has demonstrated an inability to safely store firearms, such as through a history of lost/stolen firearms.

(l)  The applicant has failed to pay legally required debts such as child support, taxes, fines or penalties imposed by governmental authorities.

(m)  The applicant fails to cooperate with the License Division's investigation of her/his application or fails to provide information requested by the License Division or required by this chapter.

(n)  Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings."

35.    Defendants' adherence to, and enforcement of, 38 RCNY 5-10 poses a substantial and significant burden on Mr. Srour's guaranteed right to possess handguns for self-defense  - the individual right that is guaranteed by the Second Amendment. *Heller*, 554 U.S. at 592-93.

***38 RCNY 3-03: Grounds for Denial of Rifle/Shotgun Permit***

36.    38 RCNY 3-03, entitled "Grounds for Denial of Permit", mirrors the grounds for the denial of a handgun license under 38 RCNY 5-10:

In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a rifle/shotgun permit may be denied where it is determined that an applicant lacks good moral character or that other

good cause exists for denial, pursuant to § 10-303 of the Administrative Code of the City of New York. Such a determination shall be made based upon consideration of the following factors:

(a)   The applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction.

(b)   The applicant has been other than honorably discharged from the Armed Forces of this country.

(c)   The applicant has or is reasonably believed to have a disability or condition that may affect the ability to safely possess or use a rifle or shotgun, including but not limited to alcoholism, drug use or mental illness.

(d)   The applicant is or has been an unlawful user of, or addicted to, a controlled substance or marijuana.

(e)   The applicant made a false statement on her/his application, or failed to disclose her/his complete arrest history, including sealed arrests. Sealed arrests are made available to the License Division pursuant to Article 160 of the Criminal Procedure Law when an application has been made for a permit to possess a gun.

(f)   The applicant is the subject of an order of protection or a temporary order of protection.

(g)   The applicant has a history of one or more incidents of domestic violence.

(h)   The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.

(i)   The applicant has failed to comply with federal, state or local law or with Police Department rules governing possession and use of handguns, rifles, shotguns or ammunition.

(j)   The applicant has been terminated from employment under circumstances that demonstrate lack of good judgment or lack of good moral character.

(k)   The applicant has demonstrated an inability to safely store firearms, such as through a history of lost/stolen firearms.

(l)   The applicant has failed to pay legally required debts such as child support, taxes, fines or penalties imposed by governmental authorities.

(m)   The applicant fails to cooperate with the License Division's investigation of her/his application or fails to provide information requested by the License Division or required by this chapter.

(n)   Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the permit. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings.

### NYC Administrative Code § 10-303:  Permits for Possession and Purchase of Rifles and Shotguns

37.     NYC Admin. Code § 10-303, entitled "Permits for Possession and Purchase of

Rifles and Shotguns provides:

It shall be unlawful to dispose of any rifle or shotgun  to  any  person unless said person is the holder of a permit for possession and purchase of  rifles  and shotguns; it shall be unlawful for any person to have in his or her possession any rifle or shotgun unless  said  person  is  the holder  of  a  permit  for  the  possession  and  purchase of rifles and shotguns.
The disposition of a rifle or  shotgun,  by  any  licensed  dealer in rifles  and shotguns, to any person presenting a valid rifle and shotgun permit issued to such person, shall be conclusive proof of the  legality of such disposition by the dealer.

a.  Requirements.  No  person shall be denied a permit to purchase and possess a rifle or shotgun unless the applicant:
(1) is under the age of twenty-one; or
(2) **is not of good moral character;** or
(3) has been convicted anywhere of a felony; of a serious  offense  as defined  in  §  265.00  (17)  of  the  New  York  State  Penal Law; of a misdemeanor crime of domestic violence as defined in § 921 (a) of  title 18,  United States Code; of a misdemeanor crime of assault as defined in the penal law where the applicant was convicted of such  assault  within the  ten  years  preceding  the submission of the application; or of any three misdemeanors as defined in local, state or  federal  law,  however nothing  in  this  paragraph shall preclude the denial of a permit to an applicant with fewer than three misdemeanor convictions; or
(4) has not stated whether he or she  has  ever  suffered  any  mental

illness or been confined to any hospital or institution, public or private, for mental illness; or

(5) is not now free from any mental disorders, defects or diseases that would impair the ability safely to possess or use a rifle or shotgun; or

(6) has been the subject of a suspension or ineligibility order issued pursuant to § 530.14 of the New York State Criminal Procedure Law or § 842-a of the New York State Family Court Act; or

(7) who is subject to a court order that

(a) was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate;

(b) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(c)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

(d) For purposes of this section only, "intimate partner" means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabitated with the person; or

(8) has been convicted of violating section 10-303.1 of this chapter; or

(9) **unless good cause exists for the denial of the permit**.

### 38 RCNY 5-10, 38 RCNY 3-03, and NYC Administrative Code § 10-303 are Preempted By the New York State Safe Act, Including Penal Law § 400.00*, et seq.*

38.    "A local law regulating the same subject matter [as a state law] is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute." *Matter of Chwick v Mulvey*, 81 A.D.3d at 169 citing, *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 N.Y.2d at 377; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 N.Y.2d at 401; *DJL Rest. Corp. v City of New York*, 96 N.Y.2d at 95; *Jancyn Mfg. Corp. v County of Suffolk*, 71 N.Y.2d at 97-98; *Dougal v County of Suffolk*, 102 A.D.2d at 532-533; *Matter of Ames v Smoot*, 98 A.D.2d at 218-219). "Such [local]

laws, were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns." *Id.* citing, *Jancyn Mfg. Corp. v County of Suffolk*, 71 N.Y.2d at 97; *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 N.Y.2d at 377.

39.     Penal Law § 400 is the exclusive statutory mechanism for the licensing of firearms in New York State. *Matter of O'Connor v Scarpino*, 83 N.Y.2d 919, 920 (1994).

40.     Penal Law § 400.00 imposes certain eligibility requirements, including that an applicant must be at least 21 years of age and that the applicant has never committed "a felony or a serious offense". Penal Law § 400.00(1).

41.     The only authority granted to the licensing authority in the City of New York, the police commissioner, is set forth in §400.00(6), which requires an individual with a non-restricted license who resides outside of the 5 boroughs of New York City to apply for an endorsement of their NYS Pistol License – permission from the police commissioner - should they desire to carry concealed within New York City, subject to certain exemptions:

> "A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city…"
>
> P.L. §400.00(6).

42.     Defendants are subject to all provisions of § 400.00, *et seq.* with regard to their implementation of procedures for licensing handguns for the residents of New York City.

43.     Section 400.00 evinces an intent to set forth a uniform system of licensing; it is the "exclusive statutory mechanism" for such licensing. As such, no locality may supplant that

licensing requirement, since doing so would undermine the uniformity of the system. *Matter of Chwick v Mulvey*, supra.

44.     If a local ordinance imposed additional requirements for lawful firearms possession, and if each county enacted additional restrictions, the uniformity of the scheme would be destroyed. The state statute, by its detailed nature, left no room for local ordinances to operate. Thus, when the Legislature demonstrated its intent to preempt the field, all local ordinances were preempted, regardless of whether they actually conflicted with the state law. *Matter of Chwick v Mulvey*, 81 AD3d at 163.

45.     The New York SAFE Act [2013] reconfirmed the State's interest in preempting the field of firearm regulation in New York State.

46.     There is ample evidence to demonstrate that the Legislature intended Penal Law § 400.00 to preempt local laws with respect to firearm licensing. First, Penal Law § 400.00 evinces an intent to set forth a uniform system of firearm licensing in the state and is the exclusive statutory mechanism for the licensing of firearms in New York State. *Matter of Chwick v Mulvey*, 81 A.D.3d at 171-172 citing, *Matter of O'Connor v Scarpino*, supra.

47.     No locality may supplant the licensing requirements provided by Penal Law § 400.00, since to do so would undermine the system of uniform firearm licensing. *Id.*

48.     38 RCNY 5-10 interrupts this uniformity by imposing additional requirements for lawful possession of a valid firearms license beyond the State's requirements under § 400 by creating additional burdens over and above those intended by the Legislature. See, e.g., *Matter of Chwick v Mulvey*, 81 A.D.3d at 171-172.

49.     "Further evidence of the intent to pre-empt is . . . provided by the complete and detailed nature of the State scheme. Comprehensiveness and detail are important in determining

the existence of an intent to pre-empt…the more comprehensive a statutory scheme, the less room for local ordinances to operate. *Matter of Chwick v Mulvey*, 81 A.D.3d at 171-172 (internal citations and quotations omitted).

50.     Penal Law § 400.00 restricts the realms in which local laws may operate and is very comprehensive. For instance, Penal Law § 400.00 governs, among other things, the eligibility for a firearms license, the types of available firearms licenses, the application process for obtaining   a firearms license, the investigation process for each firearms license application, the filing of approved applications, the validity of issued firearms licenses, the form of each firearms license, and how firearms licenses must be exhibited and displayed (see Penal Law § 400.00 [1]-[8]). In sum, Penal Law § 400.00 leaves no room for local ordinances to operate. Instead, the State statutes give localities detailed instructions concerning the procedures to be employed in licensing firearms. *Matter of Chwick v Mulvey*, 81 A.D.3d at 171-172 citing, *Dougal v County of Suffolk*, 102 AD2d at 533.

51.     Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute. *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377. When the Legislature has demonstrated its intent to preempt the field, all local ordinances are preempted, regardless of whether they actually conflict with the state law. *Matter of Chwick v Mulvey*, 81 A.D.3d at 171-172 citing, *Jancyn Mfg. Corp. v County of Suffolk*, 71 N.Y.2d at 97; *People v De Jesus*, 54 N.Y.2d at 468-470; *Matter of Ames v Smoot*, 98 A.D.2d at 217-219).

52.     New York State Law does not require a license to possess rifles and shotguns.

53.     New York City requires a license to lawfully possess rifles and/or shotguns.

54.     New York City's license requirement for rifles and shotguns is preempted by New York State, which preempts the field of firearm regulations for New York State.

55.     In that connection, the NYS Legislature enacted § 265.01, which criminalized the possession of rifles and shotguns by individuals who have been convicted of a felony or serious offense misdemeanors.

56.     No disqualifier based on a mere arrest, traffic infractions, or summonses constitutes a prohibiting factor to the possession of handguns, rifles or shotguns under the Penal Law.

57.     38 RCNY 5-10 interrupts the uniformity of the statute by imposing additional requirements for lawful possession of a valid firearms license beyond the State's requirements. See, *Matter of Chwick v Mulvey*, 81 A.D.3d at 171.

58.     38 RCNY 5-10 incorrectly purports to be consist with the authorization under § 400 to deny a handgun license application "where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00(1)."

59.     38 RCNY 5-10 (a) through (n) and 38 RCNY 3-03 (a) through (n) contain factors that Defendants determine to be 'other good cause' to deny an application for a handgun license.

60.     The factors contained in 38 RCNY 5-10 (a) through (n) are an unconstitutional discretionary judgment that an applicant lacks the 'good moral character' to be eligible to possess firearms under § 400.00(1).

61.     38 RCNY 5-10 (a), (e), (h), and (n) and 38 RCNY 3-03 (a), (e), (h), and (n) improperly create additional classes of *per se* ineligibility separate and apart from those enumerated by the State Legislature under § 400.00(1).

16

62.     Defendants' enforcement and implementation of 38 RCNY 5-10 (a), (e), (h), and (n) is preempted by § 400.00, *et seq.* and should be declared a nullity.

63.     38 RCNY 3 should be declared a nullity as preempted by the New York SAFE Act because the New York State Legislature has chosen not to license the purchase and/or possession of rifles and shotguns in this State.

64.     Apart from the overarching regulation of handguns and long guns under the SAFE Act, the NYS Legislature has regulated the possession of rifles and shotguns through Penal Law § 265.00, *et seq.* See, § 265.00(16); § 265.01(4).

## MATERIAL FACTS

65.     Joseph Srour has no prohibitors to the purchase, receipt, possession, and/or ownership of firearms under federal law or New York State law.

66.     Mr. Srour cannot exercise his right to self-defense – whether in his home or otherwise – without first obtaining the permission of the NYPD License Division.

67.     If Mr. Srour does exercise his right to possess handguns, rifles, and/or shotguns – all weapons in common use for self-defense – he will be subject to arrest, incarceration, prosecution, the loss of his Second Amendment rights and inability to obtain a firearm license in the future.

68.     Before a resident of New York City may purchase and/or possess any type of gun in common use for self-defense – handguns, rifles, shotguns, and "other firearms"[1] –  or ammunition, they are required to seek and obtain the permission of the NYPD License Division.

---

[1] Collectively referred to as "firearms" herein.

17

**Rifles and Shotguns**

69.     In every county outside of New York City, the purchase and possession of rifles and shotguns may freely be exercised without seeking permission from the government by any person having no prohibitors to the purchase and/or possession of firearms under federal or New York State law[2] after passing a federal background check through the National Instant Criminal Background Check System ("NICS").

70.     In New York City, every non-prohibited resident, like Mr. Srour, must seek and obtain the permission of the NYPD License Division before lawfully purchasing and/or possessing a rifle, shotgun, and/or ammunition.

71.     A non-prohibited person, like Mr. Srour, who exercises the right to possess rifles and shotguns for self-defense without having received Defendants' permission is subject to incarceration, criminal charges, and prosecution, and *inter alia*, the loss of one's Second Amendment rights.

72.     The mere possession of a rifle and/or shotgun for self-defense by a non-prohibited resident of New York City, like Mr. Srour, subjects that person to incarceration, criminal charges and prosecution, and *inter alia*, the loss of one's Second Amendment rights.

73.     Every non-prohibited resident of New York City, including Mr. Srour, must seek and obtain Defendants' permission before lawfully purchasing, possessing, receiving, and/or using  rifles and shotguns for self-defense in New York City.

**Handguns**

74.     New York State regulates the possession of handguns throughout the State, including the 5 boroughs of New York City.

---

[2] 18 U.S.C. 922(g), Penal Law §§ 265.00(16); 265.00(17); 265.01(4).

75.     Non-prohibited individuals cannot lawfully possess a handgun for self-defense without seeking and obtaining permission from the statutory licensing officer.

76.     New York State's licensing scheme is permissive and discretionary and imbues "broad discretion" to the licensing officer.

77.     The purchase and/or possession of a handgun for self-defense requires seeking and obtaining permission from a statutory licensing officer under Penal Law § 400.00, *et seq.*

78.     Every non-prohibited resident of New York City, including Mr. Srour, must seek and obtain Defendants' permission before lawfully purchasing, possessing, receiving, and/or using a handgun for self-defense in New York City.

79.     Every non-prohibited resident of New York City, including Mr. Srour, must seek and obtain Defendants' permission before exercising their guaranteed right to possess and/or carry weapons in common use for self-defense in New York City.

**Mr. Srour's Applications for a Permit to Possess Handguns, Rifles, and Shotguns in His Home for Self-Protection**

80.     In 2018, Mr. Srour applied to the NYPD License Division for a permit to possess rifles and shotguns in his home for self-protection ("Rifle/Shotgun Permit").

81.     Mr. Srour's application for a Rifle/Shotgun Permit was denied.

82.     In 2019, Mr. Srour applied to the NYPD License Division for a permit to possess handguns in his home for self-protection ("Handgun License").

83.     Mr. Srour's application for a Handgun License was denied.

84.     Mr. Srour timely filed an internal appeal of the denial of his application for a Rifle/Shotgun Permit with the NYPD License Division, Appeals Unit.

85.     Mr. Srour timely filed an internal appeal of the disapproval of his application for a Handgun Permit with the NYPD License Division, Appeals Unit ("License Division").

86.     In accordance with the NYPD Appeals Unit requirements, Mr. Srour's internal appeals included a written statement that was Notarized and Verified by Mr. Srour under the penalty of perjury.

**Defendants' Denial of Mr. Srour's Right to Possess Handguns, Rifles, and Shotguns**

87.     On November 7, 2019, the NYPD License Division notified Mr. Srour that his appeal of the disapproval of his applications for a Handgun License and Rifle/Shotgun Permit were both denied.

88.     The License Division denied Mr. Srour's right to possess handguns for self-defense in reliance on 38 RCNY 5-10 (a) <u>and</u> the right to possess rifles and shotguns for self-defense in reliance on 38 RCNY 3-03 (a), each based on his arrest in 1996, which was terminated in favor of the accused under N.Y. Criminal Procedure Law § 160.50, dismissed and sealed; and an arrest in 1995 that was also dismissed.

89.     Mr. Srour has no criminal convictions and no convictions for a non-criminal violation.

90.     Mr. Srour did not commit any violation of the New York State Penal Law.

91.     The License Division denied Mr. Srour's right to possess handguns for self-defense under 38 RCNY 5-10 (e) <u>and</u> the right to possess rifles and shotguns for self-defense in reliance on 38 RCNY 3-03 (e) for an alleged failure to cooperate/lack of candor during the application process for not disclosing charges that were dismissed, sealed, and terminated in his favor.

92.     Every applicant for a handgun license and rifle/shotgun permit is fingerprinted; all prior arrests revealed to the License Division upon the return of the applicant's criminal history

report from the New York State Division of Criminal Justice Services and/or the Federal Bureau of Investigation.

93.     The License Division denied Mr. Srour's right to possess handguns for self-defense under 38 RCNY 5-10 (h) and the right to possess rifles and shotguns for self-defense under 38 RCNY 5-10 (h) based on his driving history.

94.     An individual's driving history does not constitute a prohibitor to firearm possession, purchase, or ownership of firearms.

95.     Mr. Srour had no vehicle and traffic violations after the year 2000.

96.     Mr. Srour's violations of the Navigational Law in 2012 and 2015 were for creating a "wake" in the water while operating a jet ski.

97.     Mr. Srour did not fail to cooperate with the License Division, nor did he lack candor during the application process.

98.     Mr. Srour did disclose to the investigators in each application process the details of each arrest and their dispositions.

99.     Mr. Srour intends to exercise his Second Amendment right to possess handguns, rifles,  and/or shotgun in his home for self-protection notwithstanding New York City's unconstitutional regulations, Defendants' enforcement and implementation of such regulations, and the absence of a handgun license.

100.    Mr. Srour's exercise of his Second Amendment right to the possession of firearms will subject him to criminal prosecution, including incarceration and fines.

101.    If Mr. Srour is convicted of unlawful possession of a firearm, such conviction will prohibit his lawful possession of a firearm in the future, as it will constitute either a felony or "serious offense" under New York Penal Law § 265.00, *et seq.*

102.     Mr. Srour should not be forced to choose between exercising his fundamental and pre-existing right to possess firearms in his home for self-defense and being subjected to criminal prosecution.

### NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5-10 (a), (e), (h) and (n) and 38 RCNY 3-03 (a), (e), (h) and (n) Violate And Substantially Burden The Second Amendment

103.     Facially and as applied to Mr. Srour, 38 RCNY 5-10 (a), (e), (h) and (n) and 38 RCNY 3-03 (a), (e), (h), and (n) constitute an unlawful violation of the Second Amendment because they ban the possession of firearms using discretionary powers on grounds that have no cognizable, historically accepted roots to the prohibition of firearms.

104.     Heightened scrutiny is triggered by restrictions that, like the complete prohibition on handguns struck down in *Heller*, operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense or for other lawful purposes. *NY State Rifle & Pistol Assn. v. City of NY*, 883 F3d 45, 56 (2d Cir 2018) citing, *United States v Decastro*, 682 F3d 160, 166 (2d Cir 2012).

105.     As a direct result of the challenged regulations, Mr. Srour is completely banned from possessing any type of firearm for self-defense, with no available alternatives. See, *United States v Decastro*, 682 F.3d 160, 166 (2d Cir 2012).

106.     Core Second Amendment rights, like the right to possess firearms in the home for self-defense, are not subject to 'interest balancing'. *Heller*, 554 U.S. at 634  ("We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

107.    "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad. We would not apply an 'interest-balancing' approach to the prohibition of a peaceful neo-Nazi march through Skokie. See *National Socialist Party of America v. Skokie*, 432 U.S. 43, 97 S. Ct. 2205, 53 L. Ed. 2d 96 (1977) (per curiam). The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong headed views. The Second Amendment is no different. Like the First, it is the very product of an interest balancing by the people--which Justice Breyer would now conduct for them anew. And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 634-635.

***NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5-10(a) and 38 RCNY 3-03(a) – Denial Based on Arrest/Dismissed Criminal Charges Substantially Burdens Core Second Amendment Rights***

108.    Under NYC Admin. Code 10-303(2) and (9), 38 RCNY 5, and 38 RCNY 3, Defendant may deny an application for a Handgun License or Rifle/Shotgun Permit where a government employee in the Licensing Division believes the applicant "lacks good moral character" or "that other good cause" exists for denial.

109.    Defendants make such determinations based upon consideration of whether an applicant has been arrested, indicted, or convicted for a crime or violation, in any federal, state or local jurisdiction. See, 38 RCNY 5-10(a); 38 RCNY 3-03(a).

110.     The NYS Legislature enacted specific enumerated factors of ineligibility for the issuance of a pistol license, as codified in Penal Law § 400.00(1).

111.     Had the NYS Legislature intended an arrest in and of itself and/or a criminal charge that has been dismissed or reduced to a non-criminal violation, sufficient to render an individual ineligible to possess handguns, rifles, and/or shotguns, it would have enacted such language, which it did not.

112.     The NYS Legislature confined ineligibility to possess handguns and long guns related to criminal acts to <u>adjudicated</u> convictions for felonies and certain misdemeanors listed as "serious offenses" under Penal Law § 265.00(17). See also, Penal Law § 265.01(4); § 400.00(1)

113.     Mr. Srour does not have a rifle/shotgun license and, therefore, has no other means of possessing a firearm for home protection.

114.     It is beyond cavil that an arrest, in and of itself, has little to no probative value with regard to an individual's character. *People v Smith*, 27 NY3d 652, 662, n 1 (2016), citing, *People v Miller*, 91 N.Y.2d 372, 380 (1998); *People v Rodriguez*, 38 N.Y.2d 95, 101 (1975); *People v Morrison*, 194 N.Y. 175, 178 (1909); *Michael v. Arato Safir*, INDEX No. 109242/99 (Sup. Ct., NY Co., Zweibel, J.) (holding that the NYPD acted arbitrarily and capriciously in revoking licensee's handgun permit, because it irrationally narrowed its attention to one long-ago dismissed charge instead of reviewing the full record); see also, Fed. R. Evid. 609(b).

115.     Defendants denied Mr. Srour's application for a Residence Handgun License under 38 RCNY 5-10(a) <u>and</u> for a residence Rifle/Shotgun Permit based on an arrest that occurred over 22 years ago.

116.     Mr. Srour has committed no act that forfeited the preexisting and guaranteed right to possess weapons for self-defense. See, *Heller,* supra.

117.    Preventing an individual from lawfully exercising his/her right to possess a handgun for self-defense in the home based on an unproven arrest/charge unlawfully burdens core pre-existing rights falling within the scope of Second Amendment protections.

118.    Defendants' enforcement and implementation of NYS Admin. Code 10-303 (2) and (9), 38 RCNY 10-5(a) and 38 RCNY 3-03(a) violates and substantially burdens Mr. Srour's fundamental right to self-protection as guaranteed by the Second Amendment. See, *Heller*, 554 U.S. at 592.

**NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5-10(h) and 38 RCNY 3-03(h) – Denial Based on Driving History Violate and Substantially Burden the Second Amendment**

119.    Under NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5 and 38 RCNY 3, a poor driving history constitutes grounds for denying an <u>enumerated</u> constitutional right.

120.    Defendants may deny an application for a Handgun License and/or Rifle/Shotgun Permit where a government employee believes that an applicant lacks good moral character or that other good cause exists for denial.

121.    Defendants make such determinations based upon consideration of whether the applicant "has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles."

121.    The NYS Legislature's enumerated factors for ineligibility to possess handguns, as codified in Penal Law § 400.00(1), do not contain, or even contemplate, rendering an individual ineligible for the issuance of a pistol license because of their driving history, scofflaws, or similar infractions.  Had the NYS Legislature intended an arrest in and of itself and/or a criminal charge that has been dismissed or reduced to a non-criminal violation, sufficient to render an individual ineligible for the issuance of a pistol license, they would have incorporated such language.

122.    There is no New York State law that prohibits the possession of rifles or shotguns based on an individual's driving history.

123.    An individual's driving history has no cognizable, historically recognized basis as a prohibitor to the possession, purchase, or use of firearms.

124.    Mr. Srour's driving history has not stripped him of his *privilege* to possess a *driver's* license – which is not a constitutional right; it certainly does not rise to the level of seriousness as with the *sui generis* prohibitors to firearm possession, i.e., felony convictions, dishonorable discharge, involuntary commitment to a mental health facility, and the like.

125.    When Mr. Srour's driver's license was suspended for failure to pay fines, he was not thereafter denied the privilege of having a driver's license thereafter, nor was his vehicle forfeited. Once Mr. Srour became current with the financial obligations related to his driver's license, his driving privileges were reinstated.

126.    Unlike a driver's license, the right to possess firearms – handguns, rifles, and shotguns - is a guaranteed constitutionally protected right – it is not a "privilege".

127.    Preventing an individual, like Mr. Srour, from possessing handguns rifles, and shotguns, because of his driving history unlawfully and substantially burdens the Second Amendment.

128.    Defendants' enforcement and implementation of NYC Admin. Code 10-303(2) and (9), 38 RCNY 5-10(h) and 38 RCNY 3-03 (h) violates and substantially burdens Mr. Srour's fundamental right to self-defense.

***NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5-10(e) and 38 RCNY 3-03 (e) – Denial Based on Non-Disclosure of Arrest History Violate and Substantially Burden the Second Amendment***

129.    Under NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5 and 38 RCNY 3, Defendants may deny an application for a Handgun License and/or Rifle/Shotgun Permit where a government employee believes an applicant lacks good moral character or that other good cause exists for denial.

130.    Under 38 RCNY 5-10(e) and 38 RCNY 3-03(e), the right to possess handguns, rifles, and/or shotguns may be denied where a government employee feels that the applicant "failed to disclose her/his complete arrest history, including sealed arrests. Sealed arrests are made available to the License Division pursuant to Article 160 of the Criminal Procedure Law when an application has been made for a license to possess a gun."

131.    NYC Admin. Code 10-303(2)( and (9), 38 RCNY 5-10(e) and 38 RCNY 3-03(e) are unconstitutional facially and as applied to Mr. Srour.

132.    NYC Admin. Code 10-303(2) and (9), 38 RCNY 5-10(e) and 38 RCNY 3-03(e) allow the discretionary denial of the right to possess handguns, rifles, and/or shotguns based on factors that do not constitute longstanding, historically accepted prohibitors to firearm possession.

133.    Defendants' enforcement of NYC Admin. Code 10-303(2) and (9), 38 RCNY 5-10(e) and 38 RCNY 3-03(e) permits the denial of the right to possess a handgun, rifle, and/or a shotgun based on non-prohibiting factors.

134.    Every applicant for a license to possess a handgun, rifle, and/or shotgun is required to submit their fingerprints for a background check.

135.    Every background investigation involves a criminal history a check with the New York State Division of Criminal Justice Services ("DCJS") and the Federal Bureau of

Investigations ("FBI") to identify whether the individual is a person prohibited from the possession, purchase, and/or use of a firearm.

136.     Irrespective of what arrest information is placed on the application, any conviction-based prohibitor, order of protection, and/or mental health disqualifier will be revealed to the License Division by DCJS and/or the FBI.

137.     Dismissed charges, sealed adjudications, and convictions for non-criminal offenses are not disqualifiers to firearm possession.

138.     An applicant's disclosure or non-disclosure of such information is irrelevant to whether s/he is a prohibited person for purposes of firearm possession.

139.     Defendants' enforcement of NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5-10(e) and 38 RCNY 3-03 (e) substantially burden the fundamental right to possess arms for self-defense, as guaranteed by the Second Amendment.

140.     NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5-10 (a), (e), (h), and (n), and 38 RCNY 3-03 (a), (e), (h), and (n) *de facto* improperly create additional classes of *per se* ineligibility for handgun possession not enumerated in Penal Law §400.00(1) nor contemplated by the NYS Legislature.

141.     NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5-10 (a), (e), (h), and (n), and 38 RCNY 3-03  (a), (e), (h), and (n) are facially unconstitutional, and unconstitutional as applied to Mr. Srour as they substantially burden a fundamental right protected by the Second Amendment.

***Article 78 Does Not Provide a Viable Recourse for Mr. Srour***

142.     A government decision challenged under New York Civil Practice Law and Rules (CPLR) 7803(3) will be upheld unless it is found to be "arbitrary and capricious". See, *O'Brien*

*v. Keegan*, 87 N.Y.2d 436, 439-40, 663 N.E.2d 316, 639 N.Y.S.2d 1004 (1996)(citing N.Y.

Penal Law § 400.00) (A licensing officer's decision will not be disturbed unless it is arbitrary

and capricious).

143.    An Article 78 proceeding is not a viable option for Mr. Srour to seek recourse for

violations of the rights protected by the Constitution, including his preexisting right to self-

defense in his home.

144.    The "arbitrary and capricious standard" is itself unconstitutional as applied to

Second Amendment challenges generally and as applied to Mr. Srour.

154.    The "arbitrary and capricious" standard akin to the "interest balancing inquiry"

affirmatively rejected by the United States Supreme Court in the context of Second Amendment

challenges. See, *Heller*, 554 U.S. at 634-35.

155.    In *Heller*, the Supreme Court held that the ban of firearm possession could not

withstand *any* level of constitutional scrutiny. Neither can the challenged regulations herein.

156.    The statutorily defined and limited scope of an Article 78 proceeding precludes

and prevents a court from considering whether the government's actions violate a preexisting,

fundamental right protected by the United States Constitution.

## INJUNCTIVE RELIEF ALLEGATIONS

157.    Mr. Srour is being continuously injured, in fact, by Defendants' enforcement of

NYC Admin. Code 10-303 (2) and (9), 38 RCNY 5-10  (a), (e), (h), and (n);  and 38 RCNY 3-03

(a), (e), (h), and (n), and New York City Admin. Code 10-310which ban his ability to exercise

the individual rights protected and guaranteed by the Second Amendment.

158.    Mr. Srour is suffering irreparable harm by having to choose between exercising

his Second Amendment rights and being subject to criminal prosecution. Mr. Srour should not

have to risk criminal prosecution in order to exercise his core fundamental right to possess arms for self-defense.

159.   Mr. Srour will continue to suffer such harm without the requested relief.

160.   Defendants deny the allegations stated herein.

## AS AND FOR A FIRST CAUSE OF ACTION
## NYC ADMIN. CODE 10-303 (2) and (9)
### [Second Amendment]

161.   Repeats and realleges paragraphs "1" through and including "160" as if set forth in their entirety herein.

162.   NYC Admin. Code 10-303(2) and (9) individually and collectively substantially burden and violate the pre-existing individual right protected by the Second Amendment, to wit, the right to possess firearms for self-defense.

163.   NYC Admin. Code 10-303(2) and (9) individually and collectively should be enjoined and stricken as unconstitutional on their face, and as applied to the plaintiff, as they violate preexisting rights protected by the Second Amendment, 42 U.S.C. §1983.

## AS AND FOR A SECOND CAUSE OF ACTION
## 38 RCNY 5-10
### [Second Amendment]

164.   Repeats and realleges paragraphs "1" through and including "163" as if set forth in their entirety herein.

165.   38 RCNY 5-10  (a), (e), (h), and (n) individually and collectively substantially burden and violate the pre-existing individual right protected by the Second Amendment, to wit, the right to possess firearms for self-defense.

166.   38 RCNY 5-10 (a), (e), (h), and (n) individually and collectively should be enjoined and stricken as unconstitutional on their face, and as applied to the plaintiff, as they violate preexisting rights protected by the Second Amendment, 42 U.S.C. §1983.

**AS AND FOR A THIRD CAUSE OF ACTION**
**38 RCNY 3-03**
**[Second Amendment]**

167.   Repeats and realleges paragraphs "1" through and including "166" as if set forth in their entirety herein.

168.   38 RCNY 3-03  (a), (e), (h), and (n) individually and collectively substantially burden and violate the pre-existing individual right protected by the Second Amendment, to wit, the right to possess firearms for self-defense.

169.   38 RCNY 3-03  (a), (e), (h), and (n) individually and collectively should be enjoined and stricken as unconstitutional on their face, and as applied to the plaintiff, as they violate preexisting rights protected by the Second Amendment, 42 U.S.C. §1983.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**New York City Administrative Code 10-310**
**[Second Amendment]**

170.   Repeats and realleges paragraphs "1" through and including "169" as if set forth in their entirety herein.

171.   NYC Admin. Code 10-310 substantially burdens and violates the pre-existing individual right protected by the Second Amendment, to wit, the right to possess firearms for self-defense.

172.   NYC Admin. Code 10-310 should be enjoined and stricken as unconstitutional on its face, and as applied to the plaintiff, as it violates preexisting rights protected by the Second Amendment, 42 U.S.C. §1983.

### AS AND FOR A FIFTH CAUSE OF ACTION
### STATE PREEMPTION

173.     Repeats and realleges paragraphs "1" through and including "172" as if set forth in their entirety herein.

174.     New York State has preempted the field of firearms regulation in New York State. See, e.g., *Matter of Chwick v Mulvey*, 81 AD3d 161, 163 (2d Dept 2010); New York State Secure Ammunition And Firearm Enforcement Act; Penal Law § 265.00, *et seq.*, Penal Law § 400.00, *et seq.*

175.     New York Penal Law § 400.00*, et seq.* is the exclusive statutory mechanism for firearm licensing in New York State.

176.     NYC Admin. Code 10-303, 38 RCNY 5-10, 38 RCNY 3-03, and NYC Admin. Code 10-310 are preempted by New York State Law and should be declared nullities.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

- An Order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who receive actual notice of the injunction, from enforcing and implementing NYC Admin. Code 10-303(2), (9); 38 RCNY 5-10  (a), (e), (h), and (n); 38 RCNY 3-03 (a), (e), (h), and/or (n); and NYC Admin. Code 10-310 collectively and individually;

- A Declaration that NYC Admin. Code 10-303(2), (9); 38 RCNY 5-10  (a), (e), (h), and/or (n); 38 RCNY 3-03  (a), (e), (h), and/or (n); and NYC Admin. Code 10-310 individually and collectively are facially unconstitutional, and as applied to the

plaintiff, as they unduly burden and violate fundamental preexisting individual rights protected by the Second Amendment to the United States Constitution;

- A Declaration that NYC Admin. Code 10-303(2), (9); 38 RCNY 5-10  (a), (e), (h), and/or (n); 38 RCNY 3-03  (a), (e), (h), and/or (n); and NYC Admin. Code 10-310 are nullities and preempted by the New York SAFE Act, including Penal Law § 265.00, *et seq.* and § 400.00, *et seq.*;

- Granting an award of presumed compensatory damages in at least a nominal amount for the constitutional violations incurred by Plaintiff;

- A Declaration that Plaintiff is a prevailing party for purposes of an award of reasonable attorney's fees under 42 U.S.C. § 1988;

- Granting an award of reasonable statutory attorney's fees under 42 U.S.C. § 1988 and any other applicable law;

- Granting costs and disbursements to Plaintiff;

- Granting such other, further, and different relief as the Court deems just and proper.

Dated: January 2, 2022
      Scarsdale, New York

                    THE BELLANTONI LAW FIRM, PLLC
                    *Attorneys for Plaintiff*

                    _____/s/_____
                    Amy L. Bellantoni (AB3061)
                    2 Overhill Road, Suite 400
                    Scarsdale, New York 10583
                    abell@bellantoni-law.com
                    (914) 367-0090 (t)
                    (888) 763-9761 (f)