

October 12, 2022

**VIA ECF**

Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:  Joseph Srour v. City of New York, et. al.
           22-CV-0003 (JPC)

Your Honor,

    I represent the plaintiff, Joseph Srour, in the above-referenced matter. In accordance with the Court's September 26, 2022 directive, please accept the following letter in advance of Plaintiff's intended motion for summary judgment.

    Fed. R. Civ. P. 56 allows a party to move for summary judgment at any time until 30 days after the close of all discovery. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*

    There is no genuine dispute as to any material fact in this action. Plaintiff has no criminal convictions and no convictions for non-criminal violations of the Penal Law. The NYPD Police Commissioner is the state statutory licensing officer for handguns and, under NYC regulations, the licensing officer for rifles and shotguns. In New York City, handguns are regulated by 38 RCNY 5 and rifle/shotguns are regulated by 38 RCNY 3. Both types of licenses are regulated by NYC Admin. Code 10-303.

    In 2018, Mr. Srour applied to the NYPD License Division for (i) a license to possess handguns and (ii) a license to possess rifles and shotguns. In 2019, Plaintiff's applications were each denied; he filed an internal appeal with the License Division Appeals Unit, which was also denied.

    Plaintiff's handgun and rifle/shotgun license applications were denied based on:
- 38 RCNY 5-10(a) and 38 RCNY 3-03(a) for an arrest in 1996, which was terminated in favor of the accused under N.Y. Criminal Procedure Law § 160.50, dismissed and sealed; and an arrest in 1995, which was also dismissed;

- 38 RCNY 5-10(e) and 38 RCNY 3-03(e) for not disclosing charges that were dismissed, sealed, and terminated in his favor[1]; and

- 38 RCNY 5-10(h) and 38 RCNY 3-10(h) based on his driving history[2];

- 38 RCNY 5-10(n) and 38 RCNY 3-03(n) for a lack of good moral character, unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license; and

- NYC Admin. Code 10-303(2) and (9), which allow denial of the right to possess handguns, rifles, and shotguns if the License Division feels the applicants "is not of good moral character" and/or based on a subjective lack of moral character and/or if "good cause exists for the denial of the permit."

Plaintiff is entitled to judgment as a matter of law. The test to be applied to Second Amendment challenges was enunciated in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Court rejected the Second Circuit's intermediate scrutiny, means-ends, 'public safety' balancing test, where the rights of the individual are balanced against the interests of the government. The *Bruen* Court - at least twice in its opinion - set forth the test to be applied.

> "Today, we decline to adopt that two-part approach. In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution <u>presumptively protects</u> that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961)."

*Bruen*, at 2126 (emphasis added).

> "We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution <u>presumptively protects</u> that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg*, 366 U.S. at 50, n. 10, 81 S.Ct. 997."

*Bruen*, at 2129–30 (emphasis added).

---

[1] Notwithstanding that every applicant is subject to a fingerprint based criminal history background check of the New York State Division of Criminal Justice Services and Federal Bureau of Investigation databases, including Plaintiff, which revealed the very dismissed charges that Plaintiff is accused of not disclosing to the License Division.

[2] Mr. Srour had no vehicle and traffic violations after the year 2000.

There is no dispute that handguns, rifles, and shotguns are weapons in common use for lawful purposes. C.f., *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

The possession of handguns, rifles, and shotguns – "keeping Arms" – is conduct that falls within the plain text of the Second Amendment. Now, the burden falls entirely on the government – Defendants – to demonstrate that their regulations are consistent with this Nation's historical traditions of firearm regulation. Plaintiff has no additional burden.

Because "when it comes to interpreting the Constitution, not all history is created equal"[3] the *Bruen* Court categorized its historical sources consistent with *Heller*, that "Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Heller*, 554 U.S. at 634–635 (emphasis supplied).

"The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years. It is one thing for courts to reach back to the 14th century for English practices that prevailed up to the period immediately before and after the framing of the Constitution. It is quite another to rely on an 'ancient' practice that had become obsolete in England at the time of the adoption of the Constitution and never was acted upon or accepted in the colonies." *Bruen*, at 2136 (cleaned up).

*Heller* defined the Second Amendment to "guarantee the individual right to possess and carry weapons in case of confrontation." *Heller*, at 592. The *Heller* Court made clear that the right to possess firearms in the home was <u>guaranteed</u> for all ordinary people, excepting those individuals who fell within the *sui generis* class of disqualified individuals – like felons and the 'insane'. *Heller,* at 626, 631.[4]

The challenged regulations are entirely inconsistent with this Nation's history and tradition of firearm regulation. Apart from the fact that no one in the founding era was required to obtain government permission before, or as a condition of, possessing weapons, NYC Admin. Code 10-303(2) and (9) are subjective, arbitrary, and discretionary factors; 38 RCNY 3 and 5 – barring possession based on an arrest with no disqualifying conviction[5], driving history[6], failing to disclose one's complete arrest history, including sealed arrests[7]; and/or a government employee's interpretation of 'good moral character', lack of candor', failing to 'cooperate' – even requiring 'cooperation' with the government over and above providing pedigree information and fingerprints – and the like[8], the challenged subsections are inconsistent with this Nation's historical traditions of firearm regulation.

The issues to be resolved are questions of law; there are no material facts at issue in this action regarding liability. Plaintiff is entitled to judgment as a matter of law because only regulations consistent with this Nation's historical traditions of firearm regulation can survive the *Bruen* test and the challenged regulations are patently inconsistent therewith.

---

[3] *Bruen*, at 2136.
[4] However, mid-19th century surety statutes demonstrate that the disqualification of felons was not absolute, and only applied to the public carry of weapons, not possession generally. See, *Bruen*, at 2148. There was also "little evidence that authorities ever enforced surety laws." *Bruen*, at 2149.
[5] 38 RCNY 5-10(a); 38 RCNY 3-03(a).
[6] 38 RCNY 5-10(h); 38 RCNY 3-03(h).
[7] 38 RCNY 5-10(e); 38 RCNY 3-03(e).
[8] 38 RCNY 5-10(n); 38 RCNY 3-03(n).

     Thank you for the Court's consideration.

Very truly yours,

*Amy L. Bellantoni*
Amy L. Bellantoni