UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOSEPH SROUR,

                          Plaintiff,                    Case No.: 22 Civ. 3 (JPC)

        -against-


NEW YORK CITY, New York,
KEECHANT SEWELL, in her Official
Capacity as NYPD Police Commissioner,

                         Defendants.
-------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF

# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


**THE BELLANTONI LAW FIRM, PLLC**
***Attorneys for Plaintiff***
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**info@bellantoni-law.com**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................ i

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ................................ 1

LEGAL STANDARD......................................................................................... 3

*The Second Amendment* ................................................................................... 3

*Second Amendment Challenges* ...................................................................... 4

*The Historical Time Period That Determines This Nation's Traditions of Firearm Regulation* ... 3

*The Challenged New York City Regulations*.................................................. 6

ARGUMENT ..................................................................................................... 6

Standard for Summary Judgment.................................................................... 6

I.  PLAINTIFF'S CONDUCT IS 'PRESUMPTIVELY PROTECTED'
    BY THE PLAIN TEXT OF THE SECOND AMENDMENT ................................ 7

II.  THE CITY'S REGULATIONS VIOLATE THE SECOND AMENDMENT ........................ 7

    A. Discretionary Factors to Deny Firearm Licenses Violates the Second Amendment.. 8

        i. NYC Admin. Code 10-303(a)(2) and (9)....................................... 8

        ii.  NYC 38 RCNY 5-10 and 38 RCNY 3-03 Grounds for Denial
             of Handgun License and Denial of a Rifle/Shotgun Permit ......................... 9

                a. Subsection (a).............................................................. 10

                b. Subsection (e)............................................................. 11

                c. Subsection (h)............................................................. 12

                d. Subsection (n) ............................................................ 12

**TABLE OF CONTENTS (con't)**

**Page(s)**

B.   Regulations Imposing Criminal Sanctions for Merely Exercising
A Protected Right Violate the Second Amendment ............................................. 13

III.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ... 14

CONCLUSION ......................................................................................................................... 16

APPENDIX ................................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004) ......................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................... 7

*Anilao v. Spota*,
   340 F Supp 3d 224 (EDNY 2018) ......................................................................... 6, 7

*Benton v. Maryland*,
   395 U.S. 784 (1969) .................................................................................................... 5

*Bliss v. Commonwealth*,
   12 Ky. 90 (1822) ....................................................................................................... 14

*Crawford v. Washington*,
   541 U.S. 36 (2004) ...................................................................................................... 5

*D.C. v. Heller*,
   554 U.S. 570 (2008) .................................................................................................... 3

*Duncan v. Louisiana*,
   391 U.S. 145 (1968) .................................................................................................... 5

*Fulton v. City of Philadelphia*,
   141 S.Ct. 1868 (2021) ................................................................................................ 5

*Gamble v. United States*,
   139 S.Ct. 1960 (2019) ................................................................................................ 5

*Gonzalez v. City of Schenectady*,
   728 F.3d 149 (2d Cir. 2013) ....................................................................................... 6

*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*,
   565 U.S. 171 (2012) .................................................................................................... 5

*Huminski v. Corsones*,
   396 F.3d 53 (2d Cir. 2005) ......................................................................................... 6

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*In re Oliver*,
  333 U.S. 257 (1948) ................................................................................................. 5

*Klopfer v. North Carolina*,
  386 U.S. 213 (1967) ................................................................................................. 5

*Lynch v. Donnelly*,
  465 U.S. 668 (1984) ................................................................................................. 5

*McDonald v. Chicago*,
  561 U.S. 742 (2010) ................................................................................................. 3

*Near v. Minnesota*,
  283 U.S. 697 (1931) ................................................................................................. 5

*Nevada Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011) ................................................................................................. 5

*NYSRPA v. Bruen*,
  142 S. Ct. 2111 (2022) ................................................................................... Passim

*Powell v. Alabama*,
  287 U.S. 45 (1932) ................................................................................................... 5

*Ramos v. Louisiana*,
  140 S.Ct. 1390 (2020) ............................................................................................. 5

*Reynolds v. United States*,
  98 U.S. 145 (1878) ................................................................................................... 5

*Shuttlesworth v. City of Birmingham, Ala.*,
  394 U.S. 147 (1969) ................................................................................................. 8

*Staub v. City of Baxley*,
  355 U.S. 313 (1958) ................................................................................................. 8

*Timbs v. Indiana*,
  139 S.Ct. 682 (2019) ............................................................................................... 6

*United States v. Cruikshank*,
  92 U.S. 542 (1876) ................................................................................................... 3

# TABLE OF AUTHORITIES (con't)

**Page(s)**

## Cases

*Virginia v. Moore,*
   553 U.S. 164 (2008) ................................................................ 5

*Washington v. Texas,*
   388 U.S. 14 (1967) ................................................................ 6

*Weyant v. Okst,*
   101 F.3d 845 (2d Cir. 1996) ................................................... 7

*Wilson v. Arkansas,*
   514 U.S. 927 (1995) ............................................................... 5

*Wyoming v. Houghton,*
   526 U.S. 295 (1999) ............................................................... 5

## Statutes

18 USC § 921(a) ...................................................................... 24
18 USC § 922(g) ...................................................................... 11
42 USC 1988 ........................................................................... 16
NYS Criminal Procedure Law § 160.50 ................................... 10
NYS Criminal Procedure Law § 530.14 ................................... 24
NYS Family Court Act § 842-a ............................................... 24
NYS Penal Law § 400.00(1) .................................................... 22
NYS Penal Law §  265.00(17) ................................................. 24

## Rules

Fed. R. Civ. P. 56 ..................................................................... 6

## Regulations

27 C.F.R. 478.11 ...................................................................... 11
38 RCNY 3-03 .................................................................. Passim
38 RCNY 5-10 .................................................................. Passim
NYC Administrative Code 10-301 ........................................... 13
NYC Administrative Code 10-309 ........................................... 13
NYC Administrative Code 10-303 ..................................... Passim
NYC Administrative Code 10-310 .................................... Passim

## PRELIMINARY STATEMENT

Plaintiff, Joseph Srour, by and through his attorneys, submits the within Memorandum of Law, accompanying Local Rule 56.1 Statement of Undisputed Material Facts and Declaration of Joseph Srour dated December 9, 2022 with annexed exhibits in support of Plaintiff's Motion for Summary Judgment, as there are no genuine issues of material fact and Plaintiff is entitled to judgment in his favor as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

Joseph Srour is a resident of Brooklyn, New York with no prohibitors to the possession, purchase, receipt, or transfer of firearms under state or federal law, and has never been convicted of a crime or any violation of the New York State Penal Law. See, Rule 56.1 Statement at ¶¶ 1-3.

In 2018 and 2019, respectively, Plaintiff applied to the NYPD License Division ("License Division") for a permit to possess rifles and shotguns, and a license to possess handguns in his home, for self-defense. *Id.* at ¶¶ 4, 6.

During the licensing application process, Plaintiff was fingerprinted and subject to a thorough background investigation by the License Division, which revealed that he has no criminal convictions. *Id.* at ¶¶ 10-11.

Plaintiff has 2 prior arrests - from 1995 and 1996 - over 25 years ago; neither arrest resulted in a conviction, and each charge was dismissed and sealed. *Id.* at ¶¶ 3, 12-14.  During the application process, Plaintiff informed the investigator of the prior arrests and explained that the charges were dismissed and sealed because he had not committed any crime. *Id.* at ¶ 15.

Plaintiff's application for a Possession Premise Handgun License and his application for a Rifle/Shotgun Permit were each denied. *Id.* at ¶¶ 5, 7. Plaintiff timely filed an internal appeal of

---

[1] The facts material to the Court's determination of the legal issues in this matter are contained in Plaintiff's accompanying Statement of Undisputed Material Facts pursuant to Local Rule 56.1.

the denials of his applications with the NYPD License Division, Appeals Unit. *Id.* at ¶ 8.

By "Notice of Disapproval After Appeal" dated November 7, 2019, Plaintiff was notified by License Division that both of his appeals were denied. *Id.* at ¶ 9. The License Division denied Plaintiff of the right to possess handguns, rifles, and shotguns for self-defense because he did not immediately disclose his arrest for charges that were dismissed and sealed over 25 years ago, his driving history, and his failure to disclose his dismissed charges from over 25 years ago. *Id.* at ¶¶ 9 (Ex. 4 attachment), 18, 20.

Because of the challenged regulations – New York City Administrative Code 10-303(2) and (9); 38 RCNY 5-10 (a), (e), (h), and (n); 38 RCNY 3-03 (a), (e), (h), and (n); and NYC Admin. Code 10-310 – Plaintiff is prohibited from exercising his right to possess handguns, rifles, and shotguns in his home for self-defense. *Id.* at ¶ 16. "Good cause" and "moral character" are discretionary factors used to deny non-prohibited individuals of the right to possess firearms for self-defense, like Plaintiff. *Id.* at ¶ 17. No other constitutional right is terminated based on traffic infractions. *Id.* at ¶ 19.

The challenged regulations prohibit conduct protected by the plain text of the Second Amendment, including discretionary "good cause" and "moral character" factors and other criteria that lack a historical analogue in the Founding Era and are *inconsistent* with this Nation's traditions.

Plaintiff is entitled to judgment as a matter of law for the violations of his Second Amendment rights, as applied to the States through the Fourteenth Amendment.

# LEGAL STANDARD

### *The Second Amendment*

The Second Amendment to the United States Constitution declares:

> "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

The Second Amendment does not *grant* the right to possess and carry weapons to protect oneself.[2] "…it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing right*. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed." it prohibits the government from infringing upon the basic, fundamental right of the individual to keep and bear arms for self-defense in the event of a violent confrontation. *Heller*, at 592 (emphasis supplied); accord, *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. (2016).

"Individual self-defense is *the central component* of the Second Amendment right." *McDonald*, at 767, citing, *Heller*, at 599 (internal quotations omitted); *Heller*, at 595-599, 628.

The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty". *McDonald*, at 768. Indeed, the right of law-abiding responsible citizens to use arms in the defense of hearth and home is a fundamental right protected by the Second Amendment. *Heller*, at 635.

---

[2] *D.C. v. Heller*, 554 U.S. 570, 592 (2008) ("[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed (quoting, *United States v. Cruikshank*, 92 U.S. 542, 553 (1876)).

***Second Amendment Challenges***

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court reaffirmed the standard to be used by the courts to determine a Second Amendment challenge.

> "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution ***presumptively protects*** that conduct.
>
> To justify its regulation, the government may not simply posit that the regulation promotes an important interest.
>
> Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. ***Only if*** a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. 2111, 2126 (2022) (citation omitted).

*Bruen* confirmed that the test created by the circuit courts was "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny." *Bruen*, at 2129–30. To tighten the reigns on the lower courts' adjudication of Second Amendment challenges the *Bruen* Court emphasized:

> "We ***reiterate*** that the standard for applying the Second Amendment is as follows:
>
> When the Second Amendments plain text covers an individual's conduct, the Constitution ***presumptively protects*** that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, at 2129-2130 (emphasis added) (citation omitted).

***The Historical Time Period That Determines This Nation's Traditions of Firearm Regulation***

Consistent with Supreme Court jurisprudence on all other provisions of the Bill of Rights, *Bruen* looked to the Founding Era, the ratification of the Bill of Rights in 1791, as the "principal period for determining the scope or meaning of a provision of the Bill of Rights."[3]

Noting that "the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791," *Bruen* pointed to *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); and *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment). *Bruen*, at 2137–38 (emphasis added); see also, *Near v. Minnesota*, 283 U.S. 697 (1931) (First Amendment); *Reynolds v. United States*, 98 U.S. 145 (1878) (First Amendment); *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012) (First Amendment); *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021) (First Amendment); *Lynch v. Donnelly*, 465 U.S. 668 (1984) (First Amendment); *Wyoming v. Houghton*, 526 U.S. 295 (1999) (Fourth Amendment); *Wilson v. Arkansas*, 514 U.S. 927 (1995) (Fourth Amendment): *Benton v. Maryland*, 395 U.S. 784 (1969) (Fifth Amendment); *Gamble v. United States*, 139 S.Ct. 1960 (2019) (Fifth Amendment); *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020) (Sixth Amendment); *Powell v. Alabama*, 287 U.S. 45 (1932) (Sixth Amendment); *Klopfer v. North Carolina*, 386 U.S. 213 (1967) (Sixth Amendment); *In re Oliver*, 333 U.S. 257 (1948) (Sixth Amendment); *Duncan v. Louisiana*, 391 U.S. 145 (1968) (Sixth Amendment); *Washington v. Texas*, 388 U.S. 14 (1967) (Sixth Amendment); and *Timbs v. Indiana*, 139 S.Ct. 682 (2019) (Eighth Amendment).[4]

---

[3] Smith, Mark W., "Not All History Is Created Equal," October 1, 2022, at pp. 11-15.
[4] Smith, Mark W., "Not All History Is Created Equal," October 1, 2022 at pp. 17-30.

"Incorporated Bill of Rights guarantees are enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment. Thus, if a Bill of Rights protection is incorporated, there is no daylight between the federal and state conduct it prohibits or requires." *Timbs*, at 687.

### The Challenged New York City Regulations

Plaintiff challenges New York City Administrative Code 10-303(2), (9); 38 RCNY 5-10 (a), (e), (h), and (n); and 38 RCNY 3-03 (a), (e), (h), and (n); and NYC Admin. Code 10-310.[5]

## ARGUMENT

### Standard for Summary Judgment

The standard for summary judgment is well-settled. A court may grant a motion for summary judgment only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Anilao v Spota*, 340 F Supp 3d 224, 245-246 (EDNY 2018) citing, Fed. R. Civ. P. 56(a), *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (internal quotations omitted). The moving party bears the burden of showing that he is entitled to summary judgment. *Id.* citing, *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).

The court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments. *Anilao v Spota*, 340 F Supp 3d at 245-246, citing, *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); see also, *Anderson v. Liberty Lobby, Inc.*, 477

---

[5] The full text of the challenged regulations is reproduced in the Appendix attached hereto.

U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Anilao v Spota*, 340 F Supp 3d at 245-246 (internal citations omitted).

## I.   PLAINTIFF'S CONDUCT IS 'PRESUMPTIVELY PROTECTED' BY THE PLAIN TEXT OF THE SECOND AMENDMENT

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2129–30.

The conduct being regulated by the City, Plaintiff's possession of handguns, rifles, and shotguns – the right to "keep" Arms - is 'presumptively protected' by the plain text of the Second Amendment, which declares that the right to "keep and bear Arms shall not be infringed."

"As we explained in *Heller*, the textual elements of the Second Amendment's operative clause - the right of the people to keep and bear Arms, shall not be infringed - guarantee the individual right to possess and carry weapons in case of confrontation. *Bruen*, at 2134 (internal citations and quotation marks omitted).

## II.   THE CITY'S REGULATIONS VIOLATE THE SECOND AMENDMENT

"It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."

*Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969) quoting, *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958).

Permission from New York City is required to lawfully possess handguns, rifles, and shotguns, and the possession of such weapons is regulated through the statutes challenged herein.

### A. Discretionary Factors to Deny Firearm Licenses Violates the Second Amendment

The vast majority of States - 43 by our count - are "shall issue" jurisdictions, where authorities ***must issue*** concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability. *Bruen*, at 2123.

Only 6 states, including New York, are "may issue" licensing regimes under which authorities have ***discretion*** to deny licenses even when the applicant satisfies the statutory criteria. *Bruen*, at 2124.

"Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so. Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense ***so long as those States employ objective licensing requirements like those used by the 43 shall-issue States***." *Bruen*, at 2162 (emphasis added).

At the outset, there is no Founding Era historical analogue for the requirement that an individual seek and obtain the permission of the government before being able to exercise the rights protected by the Second Amendment: possessing and carrying weapons for self-defense. It is against this background that the City's regulations are challenged.

### i.  NYC Admin. Code 10-303(a)(2) and (9)

New York City Administrative Code 10-303(a)(2) and (9) are discretionary factors in New York City's "***shall not issue***" licensing scheme.  10-303 requires the denial of a Rifle/Shotgun permit if the City employee in the License Division feels that the applicant "is not of good moral character" [10-303(a)(2)] and/or if "good cause exists for the denial of the permit" [10-303(a)(9)].

Subsections (a)(2) and (9) are subjective, discretionary factors used to prevent an individual with no state or federal prohibitors from possessing firearms for self-defense, are inconsistent with this Nation's historical traditions of firearm regulation and violate the Second Amendment.

Under the *Bruen* test, the City alone has the burden of proving that New York City Administrative Code 10-303(a)(2) and (9) is inconsistent with this Nation's historical traditions of firearm regulation by identifying a historical analogue from the Founding Era (1791) wherein a government worker had discretion to prevent individuals from possessing firearms for self-defense.

While under *Bruen* this burden of proof is the City's alone, Plaintiff posits that no such historical analogue can or will be produced by the City because such discretionary power would be in direct conflict with the plain text of the Amendment, which declares the "right to keep and bear Arms *shall not be infringed.*"

### ii. NYC 38 RCNY 5-10 and 38 RCNY 3-03
### Grounds for Denial of Handgun License and
### Denial of a Rifle/Shotgun Permit

38 RCNY 5-10 identifies the City's grounds for denying a handgun license, even for home possession, and 38 RCNY 3-03 identifies the grounds for denying a Rifle/shotgun permit. Under each, the regulations incorporate "other bases for disqualification pursuant to federal, state, and local law and this chapter" for the denial of such license including "where it is determined that an applicant lacks good moral character or that other good cause exists for denial", which "determination shall be made based upon consideration of the…factors [identified therein]."

In other words, the subsections of 38 RCNY 5-10 and 3-03 "shall be" used by the City employee to determine whether the applicant has "good moral character" and whether "other good cause exists for denial."

Plaintiff challenges subsections (a), (e), (h), and (n) of each regulation, which contain identical language.

Under 38 RCNY 5-10 and 38 RCNY 3-03 a license may be denied, even just to possess a handgun, rifle, or shotgun for home protection, if the applicant (a) has a prior "arrest"; (e) made a false statement on the application, failed to disclose his complete arrest history, including sealed

arrests; (h) has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles; and (n) other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings.

### a. Subsection (a)

A prior arrest "shall be" used by the City employee to determine whether the applicant has "good moral character" and whether "other good cause exists for denial" – even if the charges were dismissed.

In making such a determination, the City considers the allegations underlying an arrest to decide whether the applicant has "good moral character" and/or whether there is "good cause" to deny the license.[6] This factor is unconstitutionally subjective and discretionary.

Under subsection (a), the City prohibits Plaintiff's ability to exercise his right to possess a handgun, rifle, and/or shotgun for self-defense in his home based on two prior arrests that occurred over 25 years ago and were dismissed by the Court and sealed having been terminated "in favor of the accused" pursuant to New York State Criminal Procedure Law section 160.50.[7]

To justify subsection (a), the City must point to a Founding Era historical analogue. Plaintiff submits that no such analogue exists because subsection (a) is entirely inconsistent with this Nation's traditional history of firearm regulation. The government had no discretionary power to prevent an individual from exercising the "right to keep and bear Arms."

---

[6] Srour Dec. at Ex. 4.
[7] Exhibit 1 to the Srour Declaration at p. 4, 6 of 7.

State and federal statutes already identify bright line, objective factors for disqualifying an individual from possessing and/or purchasing firearms[8], which include convictions of felony offenses and certain misdemeanors.[9],[10]

Neither Congress nor the New York legislature included every criminal offense in the prohibited conviction category, meaning that those criminal convictions that are not listed therein were disregarded as rising to the level of dangerousness warranting termination of a constitutionally protected right. Also excluded from the *per se* list are non-criminal violations and nuisance offenses. Generally speaking, the statutes were enacted to prevent "dangerous" people from possessing firearms. Congress even excluded "white collar" felonies from the *per se* list.[11]

Leaving aside the issue of whether state and federal prohibitions are consistent with this Nation's historical traditions of firearm regulation, even the *per se* list does not include an "arrest" alone.

### b. Subsection (e)

If an applicant makes a false statement on his application, or fails to disclose his complete arrest history, including sealed arrests[12], such information "shall be" used by the City employee to determine whether the applicant has "good moral character" and whether "other good cause exists for denial."

This factor also calls for a subjective determination of an applicant's "moral character" and allows the government unfettered discretion to deny a presumptively protected constitutional

---

[8] "Firearm," as used herein, encompasses handguns, rifles, and shotguns.
[9] See, 18 USC 922(g) [federal prohibitors].
[10] See, Penal Law sections 265.00(17) [listing serious offense misdemeanors]; 265.01(4) [barring possession of rifles and shotguns if convicted of a felony or serious offense misdemeanor]; and 400.00(1)(c) [barring issuance of a handgun license if convicted of felony or serious offense misdemeanor or under warrant of arrest for same].
[11] See, 921(a)(20)(A) (a 'crime punishable by imprisonment for a term exceeding one year' does not include . . . any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices."); see also, 27 C.F.R. 478.11..
[12] The City's Notice of Disapproval After Appeal acknowledges that Plaintiff disclosed his prior arrests to the assigned investigator. Srour Dec. at Ex. 1. So, the License Division's background check unearthed 'withheld' information that is neither a *per se* disqualifier under state or federal law nor historical bar to firearm possession.

right.[13] Because an arrest standing alone cannot terminate the rights protected by the Second Amendment, neither can its non-disclosure to the government.[14]

Under subsection (e), the City has precluded Plaintiff's ability to exercise his right to possess a handgun, rifle, and/or shotgun for self-defense in his home.

To justify subsection (e), the City alone has the burden to identify a historical analogue from the Founding Era. Plaintiff submits that no such analogue exists because subsection (e) is entirely inconsistent with this Nation's traditional history of firearm regulation.

### c. Subsection (h)

An applicant's "moral character" and a government employee's opinion of whether "good cause" to terminate a protected constitutional right "shall be" determined based on an applicant's poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.

Under subsection (h), the City has precluded Plaintiff's ability to exercise his right to possess a handgun, rifle, and/or shotgun for self-defense in his home based on his driving history.

To justify subsection (h), the City alone has the burden to identify a historical analogue from the Founding Era. Plaintiff submits that no such analogue exists because subsection (h) is entirely inconsistent with this Nation's traditional history of firearm regulation.[15]

### d. Subsection (n)

The City has the discretion to deny a firearm license if "other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the permit. In evaluating incidents or circumstances pursuant to this section, the

---

[13] The language is also overbroad to the extent that it does not even require a *mens rea* (i.e., 'intentional' or 'knowing').

[14] Plaintiff underwent an extensive background check through the License Division, as do all applicants, which includes a state and federal fingerprint-based criminal history check through the Division of Criminal Justice Services and the Federal Bureau of Investigation [Penal Law section 400.00(4)], the results of which reveal any prohibiting convictions, events, and/or conditions an applicant may have. Subsection (e) serves no objective purpose.

[15] Even by modern standards, vehicle and traffic infractions do not fall within the *sui generis* of events under which state and federal legislative bodies have terminated individual firearm rights.

License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings."

Under subsection (n), the City has precluded Plaintiff's ability to exercise his right to possess a handgun, rifle, and/or shotgun for self-defense in his home based on two prior arrests that occurred over 25 years ago and were dismissed by the Court and sealed. Again, the broad and unfettered discretion imbued in a government official under subsection (n) has no Founding Era analogue.

To justify subsection (n), the City alone has the burden to identify a historical analogue from the Founding Era. Plaintiff submits that no such analogue exists because subsection (n) is entirely inconsistent with this Nation's traditional history of firearm regulation.

The *Bruen* Court conditioned the continued viability of discretionary licensing schemes like 38 RCNY 5, 38 RCNY 3 and NYC Administrative Code 10-303 on "employ[ing] objective licensing requirements *like those used by the 43 shall-issue States*." *Bruen*, at 2162. New York City has taken no steps to conform its licensing scheme to the Constitution and edicts of the Amendment's plain text, or Supreme Court jurisprudence in *Bruen*, *Heller, McDonald*, and *Caetano.* Accordingly, the City's regulations should be declared violative of the Second and Fourteenth Amendments and permanently enjoined.

### B.  Regulations Imposing Criminal Sanctions for Merely Exercising A Protected Right Violate the Second Amendment

NYC Admin. Code 10-310 imposes criminal penalties for any violation of NYC Administrative Code 10-301 through 10-309, which includes purchasing and/or possessing a rifle or shotgun without a New York City license. Violators of this provision are guilty of a misdemeanor punishable by a fine of not more than one thousand dollars or imprisonment of not more than one year or both.

The City must also identify a Founding Era historical analogue for a regulation and imposes criminal penalties for engaging in conduct presumptively protected by the Second Amendment.

Because no historical analogue exists, NYC Admin. Code 10-310 should be declared violative of the Second and Fourteenth Amendments and permanently enjoined.

## III.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

The facts are not in dispute here. Plaintiff applied to the New York City Police Department License Division for a license to possess firearms (handguns, rifles, and shotguns) and was denied under the challenged regulations and the reasons set forth in the Notice of Disapproval After Appeal.[16]

First, firearm licensing did not exist in the Founding Era. No one was required to take any action or seek/obtain permission from the government before possessing and carrying firearms. The plain text of the Second Amendment guarantees[17] the free exercise of that right with its unconditional declaration that the right "shall not be infringed." The Amendment does not say "shall not be infringed once permission has been granted."

In fact, firearm regulations did not appear until the 1800s. The first of which, *Bliss v. Commonwealth*, 12 Ky. 90 (1822), involved *carry* restrictions, not restrictions on possession. Even then, the regulation was limited to prohibiting concealed carry, not all carry. Firearm regulations came about well outside of the relevant historical window and cannot provide the historical analogue the government is required to provide under *Bruen*.  Licensing regulations are even further removed from 1791, and thus "do not provide as much insight into [the Amendment's] original meaning as earlier sources. *Bruen*, at 2137 citing, *Heller*, at 614 (referring to post-Civil War discussions of the right to keep and bear arms, which took place 75 years after the ratification).

---

[16] Exhibit 4 to the Srour Declaration.
[17] *Heller*, at 592 ("Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of  confrontation.").

Second, notwithstanding the absence of any licensing requirements in the Founding Era, *Bruen* did not strike down licensing, but it also did not issue a blanket approval or declare licensing schemes constitutional. The Court allowed "the 43 states that employ objective shall-issue licensing regimes" to continue to exist solely because they "contain only narrow, objective, and definite standards…rather than requiring the appraisal of facts, the exercise of judgment, and the formation of an opinion" like New York's "may-issue" licensing regimes. *Bruen*, at 2138, 2162. That said, the *Bruen* Court warned that even "shall-issue" regimes may be found unconstitutional because "any permitting scheme can be put toward abusive ends…" *Bruen*, at 2138.

The *Bruen* Court specifically conditioned the survival of "may-issue" schemes, like New York, on their implementation of "objective licensing requirements like those used by the 43 shall-issue States." *Bruen*, at 2162.

The challenged regulations employ discretionary and subjective factors, in violation of the Second and Fourteenth Amendment and, therefore, they must be stricken.

Third, *Bruen* simply reiterated the scope of the Second Amendment that was previously declared in *Heller*: "As we explained in *Heller*, the "textual elements" of the Second Amendment's operative clause - "the right of the people to keep and bear Arms, shall not be infringed" - "guarantee the individual right to possess and carry weapons in case of confrontation." *Bruen*, at 2134 quoting, *Heller*, at 592. In spite of the plain text of the Second Amendment, and the historical analysis and holdings in *Heller, McDonald* and *Caetano*, New York City continues to deprive people with no state or federal disqualifiers to firearm possession, like Plaintiff, from exercising a basic right to possess firearms for self-defense.

The challenged regulations are contemporary control measures that contradict the plain text of the Second Amendment. And "where later history contradicts what the text says, the text controls." *Bruen*, 142 S. Ct. at 2137.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment should be granted in its entirety and an order should be issued (i) permanently enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who receive actual notice of the injunction, from enforcing and implementing NYC Admin. Code 10-303(2), (9); 38 RCNY 5-10  (a), (e), (h), and (n); 38 RCNY 3-03 (a), (e), (h), and (n); and NYC Admin. Code 10-310; (ii) declaring NYC Admin. Code 10-303(2), (9); 38 RCNY 5-10  (a), (e), (h), and (n); 38 RCNY 3-03 (a), (e), (h), and (n); and NYC Admin. Code 10- 310 facially unconstitutional and in violation of the Second and Fourteenth Amendments; (iii) finding that Plaintiff is a prevailing party for purposes of awarding reasonable statutory attorney's fees pursuant to 42 USC 1988; (iv) granting Plaintiff leave to seek reasonable statutory attorney's fees; (v) granting an award of presumed compensatory damages in at least a nominal amount for the constitutional violations incurred by Plaintiff; (vi) granting costs and disbursements to Plaintiff; and (vii) granting such other, further, and different relief as the Court may deem just and proper.

Dated: December 16, 2022
      Scarsdale, New York

                        THE BELLANTONI LAW FIRM, PLLC
                        *Attorneys for Plaintiff, Joseph Srour*

                        _____/s/_____
                        Amy L. Bellantoni (AB3061)
                        2 Overhill Road, Suite 400
                        Scarsdale, New York 10583
                        abell@bellantoni-law.com

# APPENDIX

**38 RCNY 5-10**
**Grounds for Denial of Handgun License**

In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a handgun license may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00 (1). Such a determination shall be made based upon consideration of the following factors:

(a)  The applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction.

(b)  The applicant has been other than honorably discharged from the Armed Forces of this country.

(c)  The applicant has or is reasonably believed to have a disability or condition that may affect the ability to safely possess or use a handgun, including but not limited to alcoholism, drug use or mental illness.

(d)  The applicant is or has been an unlawful user of, or addicted to, a controlled substance or marijuana.

(e)  The applicant made a false statement on her/his application, or failed to disclose her/his complete arrest history, including sealed arrests. Sealed arrests are made available to the License Division pursuant to Article 160 of the Criminal Procedure Law when an application has been made for a license to possess a gun.

(f)  The applicant is the subject of an order of protection or a temporary order of protection.

(g)  The applicant has a history of one or more incidents of domestic violence.

(h)  The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.

(i)  The applicant has failed to comply with federal, state or local law or with Police Department rules governing possession and use of firearms, rifles, shotguns or ammunition.

(j)  The applicant has been terminated from employment under circumstances that demonstrate lack of good judgment or lack of good moral character.

(k)  The applicant has demonstrated an inability to safely store firearms, such as through a history of lost/stolen firearms.

(l)  The applicant has failed to pay legally required debts such as child support, taxes, fines or penalties imposed by governmental authorities.

(m)  The applicant fails to cooperate with the License Division's investigation of her/his application or fails to provide information requested by the License Division or required by this chapter.

(n)  Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings."

**38 RCNY 3-03**
**Grounds for Denial of Rifle/Shotgun Permit**

In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a rifle/shotgun permit may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to § 10-303 of the Administrative Code of the City of New York. Such a determination shall be made based upon consideration of the following factors:

(a)  The applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction.

(b)  The applicant has been other than honorably discharged from the Armed Forces of this country.

(c)  The applicant has or is reasonably believed to have a disability or condition that may affect the ability to safely possess or use a rifle or shotgun, including but not limited to alcoholism, drug use or mental illness.

(d)  The applicant is or has been an unlawful user of, or addicted to, a controlled substance or marijuana.

(e)  The applicant made a false statement on her/his application, or failed to disclose her/his complete arrest history, including sealed arrests. Sealed arrests are made available to the License Division pursuant to Article 160 of the Criminal Procedure Law when an application has been made for a permit to possess a gun.

(f)  The applicant is the subject of an order of protection or a temporary order of protection.

(g)  The applicant has a history of one or more incidents of domestic violence.

(h)  The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.

(i)  The applicant has failed to comply with federal, state or local law or with Police Department rules governing possession and use of handguns, rifles, shotguns or ammunition.

(j)  The applicant has been terminated from employment under circumstances that demonstrate lack of good judgment or lack of good moral character.

(k)  The applicant has demonstrated an inability to safely store firearms, such as through a history of lost/stolen firearms.

(l)  The applicant has failed to pay legally required debts such as child support, taxes, fines or penalties imposed by governmental authorities.

(m)  The applicant fails to cooperate with the License Division's investigation of her/his application or fails to provide information requested by the License Division or required by this chapter.

(n)  Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the permit. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings.

## NYC Admin. Code § 10-303
## Permits for Possession and Purchase of Rifles and Shotguns

It shall be unlawful to dispose of any rifle or shotgun  to  any  person unless said person is the holder of a permit for possession and purchase of  rifles  and shotguns; it shall be unlawful for any person to have in his or her possession any rifle or shotgun unless  said  person  is the holder of a  permit  for  the  possession  and  purchase of rifles and shotguns. The disposition of a rifle or shotgun,  by  any  licensed  dealer  in rifles  and shotguns, to any person presenting a valid rifle and shotgun permit  issued  to such person,  shall  be  conclusive  proof  of  the   legality of such disposition by the dealer.

    a.  Requirements.  No  person shall be denied a permit to purchase and possess a rifle or shotgun unless the applicant:

(1) is under the age of twenty-one; or
(2) is not of good moral character; or
(3) has been convicted anywhere of a felony; of a serious  offense  as defined  in  §  265.00 (17) of  the  New  York  State  Penal Law; of a misdemeanor crime of domestic violence as defined in § 921 (a) of  title 18,  United States Code; of a misdemeanor crime of assault as defined in the penal law where the applicant was convicted of such  assault  within  the ten  years  preceding  the  submission of the application; or of any three misdemeanors as defined in local, state or  federal  law,  however  nothing  in  this  paragraph shall preclude the denial of a permit to an applicant with fewer than three misdemeanor convictions; or
(4) has not stated whether he or she  has  ever  suffered  any  mental illness  or  been confined  to  any  hospital or institution, public or private, for mental illness; or
(5) is not now free from any mental  disorders,  defects  or  diseases that  would  impair the  ability  safely  to  possess or use a rifle or shotgun; or
(6) has been the subject of a suspension or ineligibility order issued pursuant to § 530.14 of the New York State Criminal Procedure Law  or  § 842-a of the New York State Family Court Act; or
(7) who is subject to a court order that (a)  was  issued  after a hearing of which such person received actual notice, and at which such person had  the opportunity to participate; (b) restrains such person from harassing, stalking, or threatening  an intimate  partner  of such person or child of such intimate partner or person, or engaging in  other  conduct  that would  place  an  intimate partner in reasonable fear of bodily injury to the partner or child; and (c)(i) includes  a  finding  that  such  person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits  the  use, attempted  use,  or  threatened  use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; (d) For purposes of this section only, "intimate partner"  means,  with respect  to  a  person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person,  and  an individual who cohabitates or has cohabitated with the person; or
(8)  has been convicted of violating section 10-303.1 of this chapter; or
(9) unless good cause exists for the denial of the permit.

**New York City Administrative Code 10-310**
**Violation**

Except as is otherwise provided in sections 10-302 and 10-303.1, violation of sections 10-301 through 10-309 and of rules and regulations issued by the commissioner pursuant thereto shall be a misdemeanor punishable by a fine of not more than one thousand dollars or imprisonment of not more than one year or both, provided that the first violation of such sections involving possession of an unregistered rifle or shotgun or rifle or shotgun ammunition or an ammunition feeding device which is designed for use in a rifle or shotgun and which is capable of holding no more than five rounds of rifle or shotgun ammunition shall be an offense punishable by a fine of not more than three hundred dollars or imprisonment of not more than fifteen days, or both on condition that (a) the first violation of possession of an unregistered rifle and shotgun or rifle and shotgun ammunition or an ammunition feeding device which is designed for use in a rifle or shotgun and which is capable of holding no more than five rounds of rifle or shotgun ammunition is not in conjunction with the commission of a crime and (b) the possessor has not been previously convicted of a felony or a serious offense and (c) the possessor has not previously applied for and been denied a permit for such possession.