

October 26, 2023

<u>**VIA ECF**</u>

Hon. John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re: <u>Joseph Srour v. City of New York, et. al.</u> 22 Civ. 0003 (JPC)

Your Honor:

  I represent the plaintiff, Joseph Srour, in the above-referenced matter. I write in response to the motion filed by New York City ("Defendant") for a stay of this Court's October 24, 2023 declaratory judgment and permanent injunction of New York City Administrative Code §§10-303(a)(2) and (a)(9) ("NYC Admin. Code") pending appeal and Defendant's alternative request that the Court's temporary stay be extended for 7 days. For the following reasons, both requests should be denied.

  Four factors must be considered in determining whether to issue a stay pending appeal: (i) the likelihood of success on the merits, (ii) irreparable injury if a stay is denied, (iii) substantial injury to the party opposing a stay if one is issued, and (iv) the public interest. *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir.2002), citing, *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The "mere repetition of arguments previously considered and rejected cannot be characterized as a 'strong showing" of success on the merits. *Schwartz v. Dolan*, 159 F.R.D. 380, 383 (N.D.N.Y.1995), vacated in part, 86 F.3d 315, 318 (2d Cir.1996) (noting that it also denied a stay pending appeal).

***No Likelihood of Success on the Merits of Defendant's Appeal***

  In *Bruen*, the Supreme Court reiterated its rejection of the exercise of discretion in the Second Amendment context. *NYSRPA v. Bruen*, 142 S.Ct 2111, 2138 n. 9 (2022); 2161 (Alito, J. concurring) (New York's outlier may-issue regime is constitutionally problematic because it grants open-ended discretion to licensing officials…the unchanneled discretion for licensing officials…is inconsistent with the Second Amendment right to possess and carry handguns for self-defense).

  In a contemplative, scholarly, academic, and measured opinion, this Court properly applied the text, history, and tradition test required under *Bruen*. Beginning with the plain text, this Court acknowledged that the Second Amendment codified a *pre-existing*, individual right to keep and bear arms, and that the *central component* of that right is individual self-defense. [Opinion, 9]. The Court correctly identified the test for Second Amendment challenges announced in *Bruen* [*Id.* 9-12] noting Defendant's failure to understand that *Defendant* shoulders the weight of justifying the challenged regulations, not Plaintiff. [*Id.*, n. 6]. After identifying the regulations at issue [*Id.*, 13-18], the Court

reiterated the test to be applied under *Bruen* and proceeded to apply it.[1] The Court properly found that Plaintiff's conduct – possessing firearms for a lawful purpose – plainly falls within the scope of the plain text.[2]

The Court properly rejected the claim that the Second Amendment does not apply to Plaintiff because Defendant *opines* he is not 'responsible and law abiding.' [*Id.*, 23-25].[3] Defendant's use of the phrase "law-abiding" is absent from both an historical analysis of the Second Amendment and the plain language of it. "The People" refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community. *Heller*, 554 U.S. at 580-81 (citations omitted). It is from this premise that Defendant was required to prove that its regulations are consistent with this Nation's historical traditions.

The Court went on to appropriately find that Defendant failed to identify any historical analogue for empowering the government with unfettered discretion over who and who cannot exercise the right to possess and carry arms. [*Id.*, 25-40]. In meticulous and methodical fashion, the Court analyzed Defendant's proffered analogues before concluding that the challenged laws, much like the proper-cause inquiry invalidated in *Bruen*, have the effect of preventing law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." [Opinion, 28]. Stated differently, the regulations "bestowed vast discretion in licensing officials" – power inconsistent with the plain text, history, and tradition, and rejected by the Supreme Court.

The Court properly held that Defendant's proffered analogues were inapposite and otherwise did not demonstrate any historical analogue for investing officials with the broad discretion to restrict someone's Second Amendment rights based on determining s/he lacked good moral character or for a very undefined notion of 'good cause'[4] [*Id.*, 30-31] and rejected Defendant's 'public safety' justifications, as required to under *Heller, McDonald,* and *Bruen*. Imbuing the government with discretion over who may and may not keep and bear arms is antithetical to the purpose of the amendment itself. And "to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

The Supreme Court's warning to *New York* in *Bruen* about its discretionary licensing schemes, Defendant's failure to identify any historical analogue, and the finding reached by this Court after a thorough text, history, and tradition analysis lead to the conclusion that Defendant has ***zero*** likelihood of succeeding on the merits of an appeal of this Court's Opinion and Order.

### *There Is No Irreparable Injury To Defendant*

Defendant will suffer no harm from enjoining patently unconstitutional regulations. And as with many other New York City regulations, those enjoined by this Court "do not actually have any beneficial effect on public safety." *Bruen*, at 2160, citing N. Y. Penal Law Ann. § 400.00(6) (West Cum. Supp. 2022); Suggestion of Mootness in *New York State Rifle & Pistol Assn., Inc. v. City of New York*, O. T. 2019, No. 18–280, pp. 5–7.

---

[1] The Court also conducted an analysis of standing. [*Id.* at 19-22].
[2] The Court correctly rejected Defendant's claim that the
[3] "Defendants impermissibly merge a person's conduct with their status as defined by the regulation. *Bruen*, however, draws a clear distinction between the individual's conduct and the regulation which burdens that conduct. See 142 S. Ct. at 2126." [*Id.*, 24].
[4] Notwithstanding Defendant's claim that NYC Admin. Code 10-303(2)(9) was repealed, it continues to be published as remaining in effect and 'on the books.' https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCadmin/0-0-0-130512 (see attached, reflecting "2023 October (current)").

In *Spargo v. New York State Comm'n on Jud. Conduct*, No. 1:02-CV-1320, 2003 WL 2002762, at *1 (N.D.N.Y. Apr. 29, 2003) the Commission argued that, absent a stay pending appeal, it would be impeded from carrying out its mandate under the New York Constitution, and confusion and delay in its proceedings. Finding no irreparable harm existed, the court noted that the Commission is "free to pursue misconduct proceedings pursuant to any Code provisions that were not challenged…[and] should the decision be reversed on appeal, the Commission could then proceed [accordingly]."

Likewise, removing broad and unfettered discretion from New York City's licensing scheme has no effect on the remaining unchallenged and objective factors at Defendant's disposal. See, e.g., *Bruen*, at 2162.

*Plaintiff Will Continue To Suffer Substantial Injury If A Stay Is Granted*

Plaintiff's claims have proven to be meritorious and he has suffered actual harm long enough – as have the people of the City of New York. The loss of a constitutional right, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (First Amendment). *C.f., Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 350 (2d Cir. 2003) (presuming harm where regulation prohibited religious services or religious instruction in school facilities). Plaintiff has been suffering an absolute bar to a pre-existing and guaranteed right[5] since the denial of his license application in 2019.

Defendant claims a stay is 'unlikely to affect Plaintiff.' But of all people, Plaintiff – an American-Israeli -- is decidedly *not unaffected* by the City's continued and unabridged violation his basic human rights. Plaintiff has suffered the weight of being disarmed by the government for the past four years; unable to protect his own home. This heavy burden has only increased in light of recent events, both in the Middle East and domestically. The sheer relief and hope my client experienced when hearing that the seemingly-impossible had happened in New York City – a federal judge upheld the Second Amendment -- *cannot* be quantified. Plaintiff is now beginning the process of reapplying for a license.[6] All Americans-- the People -- have the right to self-protection. Plaintiff should not be violated by the City any longer; the loss of *preexisting* constitutional rights is *unquestionably* substantial harm.

*The Public Interest Favors Denying Defendant's Motion For A Stay*

No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal. The restrictions challenged here especially and disproportionately burden the right to self-defense, and thus "strike at the very heart of the Second Amendment's guarantee of the right to possess and carry arms for self-defense. Such a direct and severe constitutional violation weighs heavily in favor of granting injunctive relief. *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) (First Amendment); see also, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, —– U.S. ——, 134 S.Ct. 2751 (It is always in the public interest to prevent the violation of a person's constitutional rights); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1098 (9th Cir. 2022) (it is always in the public interest to enjoin unconstitutional laws).

---

[5] *Heller*, at 592.

[6] Defendant criticizes Plaintiff for not previously reapplying for a license – further highlighting the whimsical nature of its regulations. Reapplication would have been futile, as Defendant believes Plaintiff is 'dangerous' and repeats that view in its motion.

*Other Information Not Relevant to the Four Prongs*[7]

Defendant presses other immaterial grounds for a stay, including 'public safety' considerations. There is no evidence that the challenged regulations have any effect on public safety. Even if such a showing could be made, which it cannot, public safety considerations are off the table in Second Amendment challenges. See, *McDonald*, at 783 (the Supreme Court recognized that the right to keep and bear arms is "not the only constitutional right that has controversial public safety implications. All the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category"); *Bruen*, at 2160–61 (Alito, J. concurring) (cleaned up) (*Heller* rejected the view that 'guns are bad so state and local jurisdictions should be free to restrict them essentially as they see fit'); *Heller*, at 635 (The Second Amendment is the very product of an interest balancing by the people and it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense. It is this balance—struck by the traditions of the American people—that demands our unqualified deference). *Bruen* itself struck all means-end considerations when it rejected the test previously applied in this Circuit. *Bruen*, at 2126-27.

Second, whether other district courts have granted stays in Second Amendment challenges is not a factor for consideration under FRAP 62, nor do the decisions from three district court cases in 2022 establish that the practice as "routine." New York State has an extensive and negative history of disregarding the Second Amendment and Supreme Court precedent in its interpretation.

Third, an "inconsistent decision" among the district courts is unlikely. Defendant concedes that this Court's text, history, and tradition analysis and conclusions are "strikingly similar" to those reached in the Northern District's assessment of New York State's "moral character" clause in Antonyuk.[8] True, because each court adhered to the plain text, history, and tradition, and the precedents of *Heller, McDonald,* and *Bruen*. Unless another district court issues a rogue decision disregarding those standards, there will be no 'inconsistent' decision from a district court – or the Second Circuit.

Fourth, 'discretion' is not an 'unsettled' issue in the context of Second Amendment rights. As the *Heller* court declared after conducting an extensive historical analysis, "Assuming he is not disqualified from exercising Second Amendment rights, the District **must** permit *Heller* to register his handgun and **must issue him a license** to carry it in the home." *D.C. v. Heller*, 554 U.S. 570 (2008). Americans have a "guaranteed individual to possess and carry weapons in case of confrontation." *Heller*, at 592 (cleaned up). The Court did not remand the matter for a "moral character" assessment.

Defendant's motion should, respectfully, be denied in its entirety. Thank you for the Court's consideration in this matter.

Very truly yours,

*Amy L. Bellantoni*
Amy L. Bellantoni
Encl.

---

[7] Plaintiff does not concede any claim or argument made by Defendant's letter motion, but not specifically addressed in this response, and reserves all rights to advance any and all claims favorable to Plaintiff.

[8] Antonyuk reviewed Penal Law 400.00(1)(b), which has its own unique problems. There, a licensing officer cannot issue or renew a license until he is satisfied that the individual will use a firearm "only in a manner that does not endanger oneself **or others.**" By definition, that precludes self-defense.