UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JOSEPH SROUR, :
:
Plaintiff, :
: 22 Civ. 3 (JPC)
-v- :
: <u>ORDER</u>
NEW YORK CITY, New York, and EDWARD A. :
CABAN, In His Official Capacity as NYPD Police :
Commissioner, :
:
Defendants. :
:
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On October 24, 2023, the Court issued an Opinion and Order in which it, *inter alia*, declared subsections (a)(2) and (a)(9) of New York City Administrative Code Section 10-303 to be facially unconstitutional and also permanently enjoined Defendants New York City and Edward A. Caban in his official capacity as the Commissioner of the New York Police Department ("NYPD") from enforcing these two provisions. Dkt. 43 ("Opinion") at 47-48. The Court temporarily stayed the injunction until midnight on October 26, 2023. *Id.* at 48. Defendants have since filed a notice of appeal of the Opinion to the United States Court of Appeals for the Second Circuit. Dkt. 47.

Before the Court is Defendants' request, dated October 25, 2023, that the Court either stay the declaratory judgment and permanent injunction pending appeal pursuant to Federal Rule of Procedure 62(c) and (d), or, in the alternative, extend the temporary stay for an additional seven days from the date of Defendants' filing. Dkt. 45 ("Motion"). Plaintiff Joseph Srour responded the following day. Dkt. 48 ("Opposition"). As detailed below, the Court denies the stay pending appeal but will grant an extension of the temporary stay through 11:59 p.m. on October 30, 2023,

to afford Defendants an opportunity to seek a stay from the Second Circuit pursuant to Federal Rule of Appellate Procedure 8(a). If Defendants apply for a stay pending appeal before the Second Circuit prior to 11:59 p.m. on October 30, 2023, the temporary stay will further remain in effect until the Second Circuit decides the stay motion.

## I.  Stay Pending Appeal

Federal Rule of Civil Procedure 62 grants district courts the discretion to issue a stay pending appeal. "The factors relevant to granting a stay pending appeal are the applicant's 'strong showing that he is likely to succeed on the merits,' irreparable injury to the applicant in the absence of a stay, substantial injury to the nonmoving party if a stay is issued, and the public interest." *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). While "[t]he first two factors are the most critical," *id.*, the Second Circuit has also held that "these criteria [are] somewhat like a sliding scale," *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006). "[T]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* (internal quotation marks omitted). Nevertheless, when the "likelihood of success [is] totally lacking, the aggregate assessment of the factors bearing on issuance of a stay pending appeal cannot possibly support a stay." *Uniformed Fire Officers Ass'n*, 973 F.3d at 49.

### A. Likelihood of Success on the Merits

The Court concludes that a stay pending appeal is not warranted in this case under the standards discussed above. Starting with likelihood of success on the merits, the Court explained in detail in the Opinion why subsections (a)(2) and (a)(9) run afoul of the Second Amendment. *See, e.g.*, Opinion at 39-40. Defendants' arguments to the contrary are unpersuasive. Defendants claim that the Court failed to take into account the current version of Section 3-03 of Title 38 of

the Rules of the City of New York, which—per Defendants—now "defines 'good moral character' and the factors which are to be used in making that determination, and does not include any consideration of 'other good cause' not contained in the provision." Motion at 3. However, the Court did not take the current version of Section 3-03 into account in the Opinion because Srour lacks standing to challenge that provision, Opinion at 21, "[a]nd federal courts do not issue advisory opinions," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Moreover, subsections (a)(2) and (a)(9) of New York City Administrative Code Section 10-303 have not been amended, and the constitutionally problematic language identified by this Court remains on the books. The amendments to Section 3-03 that Defendants point to did not also amend Section 10-303. Further, Defendants' argument that the current version of Section 3-03 provides objective criteria that somehow constrain a licensing officer's discretion under Section 10-303(a)(2)—particularly given the deletion of the "other good cause" language—is unpersuasive for another reason. As the Court explained in the Opinion, the inclusion of objective components does not cure the constitutional defects in allowing a licensing officer to deny individuals their Second Amendment rights based on "good moral character" in the first place. Opinion at 28. As the Court noted, "the very *notion*[] of 'good moral character' . . . [is] inherently exceedingly broad and discretionary." *Id.* at 29 (emphasis added). "Someone may be deemed to have good moral character by one person, yet a very morally flawed character by another." *Id.* And Defendants were likewise unable to demonstrate a tradition of similar regulations, as *Bruen* requires. *Id.* at 32; *see New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022) ("To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.").

Defendants' other arguments for their likelihood of success fare no better. The Court did

3

not "conclu[de] that only applicants who are 'dangerous' may be denied a license." Motion at 3. To the contrary, the Opinion did not reach a number of criteria for rifle or shotgun permit denials under Section 10-303 based on factors at least not directly related to dangerousness, including the limitations on people under the age of twenty-one and those with certain criminal convictions. Opinion at 45 ("[T]he other provisions of Section 10-303 remain valid and enforceable."); *see* N.Y.C. Admin. Code § 10-303(a)(1) (age limitation); *id.* § 10-303(a)(3) (convictions limitation). Finally, while the desire to "prevent inconsistent decisions among District Courts in this Circuit," Motion at 3, may have bearing on the other prongs of the stay analysis, this factor simply does not bear on the likelihood of success on the merits. In the absence of other arguments, and for all the reasons stated in the Opinion, the Court concludes that Defendants have failed to make a "strong showing that [they are] likely to succeed on the merits." *Uniformed Fire Officers Ass'n*, 973 F.3d at 48 (internal quotation marks omitted).

### B. Irreparable Harm

Turning to irreparable harm, the Court will credit Defendants' assertion that they may feel obligated to alter aspects of the Section 10-303 permitting scheme in order to comply with the injunction, a process which ostensibly would "complicat[e] and slow[] [NYPD's] ability to determine applications in the short term." Motion at 2. However, the Court notes that all the injunction requires Defendants to do is to simply stop denying permits on two unconstitutional grounds; it does not by its own terms require any additional revisiting of the Section 10-303 permitting scheme writ large.

The speculative nature of Defendants' stated concerns also undermines the notion that the denial of a stay would cause them irreparable harm. After all, "an applicant for a stay pending appeal must demonstrate threatened irreparable injury that is imminent or certain, not a matter of speculation." *United States v. Stein*, 452 F. Supp. 2d 281, 284 (S.D.N.Y. 2006). The same is true

of Defendants' stated concern over permits that would be issued under a hypothetical "interim procedure." Motion at 2. Defendants posit that "[g]iven the [ostensible] likelihood of success for defendants on appeal, this process would ultimately be in vain following an appellate decision and the determinations issued during the pendency of appeal might be inconsistent with those issued before and after." *Id.* But such a scenario would only occur *if* the NYPD adopts an interim procedure and *if* the Second Circuit ultimately rules in Defendants' favor. Far from showing "imminent or certain" harm, Defendants' arguments related thereto instead rest on one contingency after another. Accordingly, Defendants have not demonstrated irreparable harm.

### C. Remaining Factors

Turning to the remaining factors, the public interest also squarely weighs against a stay pending appeal. As the Court explained in its Opinion, "'the public interest is best served by ensuring the constitutional rights of persons within the United States are upheld,' a proposition that certainly rings true for rights as 'fundamental' as those protected by the Second Amendment." Opinion at 45 (first quoting *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020) (internal quotation marks omitted), then quoting *Bruen*, 142 S. Ct. at 2151). Defendants correctly point to the need to protect "public safety and well-being." Motion at 2. However, "noble ends cannot justify the deployment of constitutionally impermissible means." *Wessmann v. Gittens*, 160 F.3d 790, 809 (1st Cir. 1998). As for substantial injury to Srour as the nonmoving party, he points to the fact that his Second Amendment rights may continue to be infringed upon if the Court grants a stay pending appeal, especially given that he "is now beginning the process of reapplying for a license." Opposition at 3. Defendants correctly point out that the Court never passed on Srour's as-applied challenge, Motion at 3, and it is indeed difficult to predict exactly how a stay might affect any new permit application on Srour's part. *See also* Opinion at 2 (explaining that Srour abandoned his as-applied challenges). But the Court also need not resolve this dispute—the fact

5

that the other factors weigh so clearly against a stay pending appeal militates toward the overall conclusion that such a request should be denied.

On a final note, Defendants make much of the fact that the Second Circuit's decision in *Antonyuk v. Hochul*, No. 22-2908 (2d Cir. argued Mar. 20, 2023), remains pending. *See, e.g.*, Motion at 2-3. While the Court can appreciate Defendants' arguments, the proper forum for them is the Second Circuit, rather than this Court. After all, just as this Court has "the inherent authority to manage [its] docket[] and courtroom[]," so does the Second Circuit. *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). Defendants have now appealed to the Circuit, and it would be neither appropriate nor justified for this Court to weigh in on how the Circuit should handle this case in tandem with *Antonyuk*.

## II. Temporary Stay and Conclusion

For the foregoing reasons, the Court denies Defendants' request for a stay pending appeal. However, the Court will grant in part Defendants' alternative request to extend the temporary stay of the injunction in order to afford them an opportunity to seek a stay before the Second Circuit under Federal Rule of Appellate Procedure 8(a). The temporary stay will therefore continue through 11:59 p.m. on October 30, 2023. As stated above, if Defendants apply for a stay pending appeal before the Second Circuit prior to 11:59 p.m. on October 30, 2023, the temporary stay will remain in effect until the Second Circuit decides the stay motion. The Clerk of Court is respectfully directed to close Docket Number 45.

SO ORDERED.

Dated: October 26, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge