

April 13, 2026

**<u>VIA ECF</u>**

Hon. John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>Joseph Srour v. City of New York, *et al*.</u> 22 Civ. 0003 (JPC)

Your Honor,

I represent the plaintiff, Joseph Srour. Please accept the following, along with the accompanying Declaration of Amy L. Bellantoni with exhibits in accordance with the Court's March 30, 2026 Order.

Plaintiff respectfully moves for an award of reasonable attorney's fees and costs under 42 U.S.C. § 1988. Plaintiff prevailed in this § 1983 action challenging New York City firearm regulations 38 RCNY 5-10 and New York City Administrative Code § 10-303(a)(2) and (9), and the relief obtained materially altered the legal relationship between the parties.

The principal dispute is not entitlement but amount. Plaintiff requests an hourly rate between $550-650 for the legal work performed by his counsel Amy L. Bellantoni ("Ms. Bellantoni"). This request is supported by the governing Second Circuit framework, Ms. Bellantoni's more than twenty-seven years of practice, her long-standing concentration in firearms-related constitutional litigation, her objective record of litigating post-*Bruen* Second Amendment cases in multiple federal districts and courts of appeals, her prior fee awards in this District, and the current SDNY market for experienced civil-rights counsel.

The request is also measured. Plaintiff is not asking the Court to award complex commercial litigation rates in Manhattan or to convert Ms. Bellantoni's solo practitioner status into a premium. The narrower point is that Ms. Bellantoni's solo status cannot justify an automatic discount, and that the market rate must reflect the actual level of specialized constitutional skill required to litigate this case effectively. *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006).

Section 1988 provides that, in an action to enforce § 1983, the Court may allow the prevailing party a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988(b). A prevailing civil-rights plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an

award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). No "special circumstances" exist here.

In the Second Circuit, the governing framework is set forth in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008). The court must determine "the rate a paying client would be willing to pay" for the services rendered, bearing in mind that the client "wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190. The court considers all relevant factors, including the *Johnson* factors, as incorporated into the Second Circuit's standard. *Id.* at 186 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)): (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Critically, a solo practitioner is entitled to the same market rate as a comparably experienced attorney at a large firm. *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("reasonable fees" under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel). In determining the prevailing rate, courts may rely on evidence including prior fee awards to the same attorney or comparable practitioners, surveys and published rate data. *See Blum*, 465 U.S. at 896 n.11; *Arbor Hill*, 522 F.3d at 190.

## POINT I: PLAINTIFF IS A PREVAILING PARTY ENTITLED TO ATTORNEY'S FEES

Plaintiff's motion for summary judgment was granted by this Court because the City failed to identify *any* historical analogue supporting the vast, unbridled discretion over the licensing of handguns and long guns, as required by the Supreme Court's test under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). This Court issued a judicial declaration that the challenged regulations violate the Second Amendment and an Order permanently enjoining New York City Admin. Code § 10-303(a)(2), (9). The Court went on to grant Plaintiff $76,626.25 in financial and emotional damages for the City's unconstitutional deprivation of his Second Amendment rights. *Srour v. New York City*, No. 22 CIV. 3 (JPC), 2026 WL 866354 (S.D.N.Y. Mar. 30, 2026). That damages award is itself without precedent in the history of Second Amendment litigation against New York City's firearm regulatory apparatus.

A party "prevails" within the meaning of § 1988 when it obtains "actual relief on the merits of [its] claim" that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992); *Bridges v. Eastman Kodak Co.*, 102 F.3d 56, 58 (2d Cir. 1996). Plaintiff is therefore a prevailing party entitled to reasonable attorney's fees.

This case stands as an historic and transformative victory for the Second Amendment rights of New Yorkers. The Court's October 24, 2023 decision in *Srour v. City of New York* was a major merits victory not only for Plaintiff, but for New York City firearm applicants more broadly. Plaintiff was successful in his facial Second Amendment challenges to New York City Administrative Code § 10-303(a)(2) and (a)(9), and the former versions of 38 RCNY 5-10. This Court granted summary judgment in favor of Plaintiff, finding the "good moral character" and "good cause" provisions of New York City Administrative Code § 10-303 facially unconstitutional under the Second and Fourteenth Amendments, as the City was unable to identify any historical tradition of firearm regulation that could justify vesting

licensing officials with unchecked discretion to deny law-abiding residents the right to possess firearms.

To counsel's knowledge, this Court's decision was the first merits-based federal decision to invalidate a New York City firearm regulation under the Second Amendment, and no other reported district-court ruling on the merits had been entered against New York City's firearm laws. That result was therefore unusually significant in a jurisdiction where similar challenges have generally failed or ended without any invalidation of New York City law. And the subsequent vacatur of this Court's injunctive and declaratory relief by the Second Circuit was not merits-based.

Plaintiff is entitled to an award of reasonable attorney's fees including fees incurred in opposing the City's interlocutory appeal. The City's voluntary issuance of discretionary firearm licenses to Plaintiff and its motion to the Second Circuit to dismiss its own appeal as moot was not a merits-based determination. The subsequent partial vacatur of this Court's October 24, 2023 Order was a procedural by-product of that dismissal, not a rejection of the legal merits. The district court judgment remained intact throughout the appeal, and Plaintiff successfully defended it until the City chose to render the appeal moot. *Kirk v. New York State Dep't of Educ.,* 644 F.3d 134, 138 (2d Cir. 2011)(plaintiff is a prevailing party under § 1988; no court overturned his favorable judgment on the merits or rejected the legal premise of the district court's decision). The City is also liable for Plaintiff's costs in connection with opposing the appeal, as costs are taxed against the appellant where an appeal is dismissed. Fed.R.App.P. 39(a).

## POINT II: AN HOURLY RATE OF $550–650 IS REASONABLE AND APPROPRIATE

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Ms. Bellantoni's requested rate of $550–650 per hour reflects the prevailing market rate in the Southern District of New York for a constitutional litigator with her experience, expertise, and track record. This rate is supported by: (a) her extensive qualifications; (b) the specialized and demanding nature of Second Amendment litigation in this Circuit; (c) prior fee awards in comparable cases; and (d) prevailing market data.

### A. The Court May Determine The Market Rate From Comparable Awards, Ms. Bellantoni's Own Prior Awards, And The Court's Market Knowledge—Even Without Peer Affidavits

Plaintiff is not submitting peer affidavits. That omission does not preclude a market-based award. The Second Circuit has made clear that the reasonable-rate inquiry may be informed by prior awards in comparable cases, the Court's familiarity with rates in this District, and the evidence the parties actually provide. *Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). What matters is that the requested rate be anchored in the prevailing market rather than in unsupported assertion. *Blum*, 465 U.S. at 896 n.11.

Here, Plaintiff supplies the kinds of objective proof those cases contemplate: Ms. Bellantoni's declaration and case list; her prior fee awards in this District; recent SDNY rate decisions involving experienced civil-rights lawyers; and a groundbreaking Ninth Circuit merits opinion, argued by Ms.

- 3 -

Bellantoni –in addition to the novel and landmark decisions by this Court, demonstrating current high-level experience in the precise niche area implicated here—Second Amendment litigation. That is sufficient to permit a disciplined, market-based award.

### B. Ms. Bellantoni's Qualifications And Objective Results Place Her Well Above The Ordinary Civil Rights Rate

Ms. Bellantoni graduated from law school in 1998 and has practiced for more than twenty-seven years. As her Declaration explains, she previously served as an Assistant District Attorney and Senior Assistant District Attorney, was cross-designated for work with the New York Attorney General's Organized Crime Task Force and the United States Attorney's Office for the Southern District of New York, has tried multiple federal civil-rights cases to verdict, and for over a decade has concentrated the overwhelming bulk of her practice in firearms-related constitutional litigation. See Bellantoni Decl. ¶¶ 2, 4-5, 9-11.

That concentration matters under *Arbor Hill*. The Court must consider not just years in practice, but also the "complexity and difficulty of the case," the "available expertise," and the resources required to litigate effectively. 522 F.3d at 184. Post-*Bruen* Second Amendment litigation is not routine § 1983 work. It requires historical-method briefing, careful treatment of analogues, mastery of rapidly developing appellate precedent, and familiarity with firearms-licensing regimes that differ substantially across jurisdictions. See *Bruen*, 597 U.S. at 24-31; *United States v. Rahimi*, 602 U.S. 680, 691-92 (2024).

Ms. Bellantoni's recent record confirms that this expertise is not theoretical. In *Baird v. Bonta*, Ms. Bellantoni argued for the plaintiff-appellant in the Ninth Circuit and obtained a published merits opinion holding that California's ban on open carry in counties with populations greater than 200,000—home to roughly 95% of the State's population—fails under *Bruen*. *Baird v. Bonta*, 163 F.4th 723, 726, 741 (9th Cir. 2026). Whatever rate might be appropriate for a capable generalist civil-rights attorney, that kind of current merits result in a leading post-*Bruen* case supports placement materially above the ordinary $400-$450 band.

### C. Recent SDNY Authorities Place Routine Cases In The $400-$450 Band And Recognize A Higher $550-$650 Band For Experienced Civil Rights Counsel In More Demanding Matters

SDNY decisions repeatedly distinguish between ordinary civil-rights cases and more demanding matters. On the lower side, courts frequently award experienced counsel approximately $400-$450 in straightforward or early-resolved cases. A rate between $550-650 places this case where it belongs: above the $400-$450 rates commonly awarded in routine or early-resolved civil-rights matters, but below the very top end of the $800 hourly rates in more complex civil rights litigation. *See, Sierra v. City of New York*, No. 20CV10291CMGWG, 2023 WL 7016348, at *7 (S.D.N.Y. Oct. 25, 2023) (awarding $800 per hour in complex class-action civil rights case); *Greenburger v. Roundtree*, No. 17CIV03295PGGSLC, 2020 WL 6561598, at *12 (S.D.N.Y. Jan. 16, 2020), report and recommendation adopted, No. 17CIV3295PGGSLC, 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020) (recognizing SDNY precedent awarding experienced solo civil rights practitioners and civil rights attorneys from small firms hourly rates as high as $550 to $650; *McInnis v. City of New York*, No. 24-CV-3449 (GHW) (RFT), Dkt. 150 at 3 (S.D.N.Y. Sept. 11, 2025) (awarding attorney with twelve years of experience $600 hourly rate in sanctions motion; finding rates of $450 and $600 within the range generally accepted as reasonable in

this District); *Sanson v. City of New York*, No. 19 Civ. 2569 (AT), 2021 WL 1191566, at *3 (S.D.N.Y. Mar. 30, 2021) (2021 case noting that the customary rate for experienced civil-rights litigators ranged between $400 to $600 per hour).

The SDNY recognizes a higher band for highly experienced civil-rights lawyers when the lawyer's experience, specialization, and the demands of the case justify it. In <u>2010</u>, Judge Chin held that "[a] rate of $550 is . . . consistent with rates awarded in this district for experienced civil rights lawyers." *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 513 (S.D.N.Y. 2010). In <u>2016</u> *Coakley* explained that "experienced solo civil rights practitioners and civil rights attorneys from small law firms have been awarded hourly rates as high as $550 to $650," while reducing the requested rate there because the case was simple and short-lived. *Coakley v. Webb*, No. 14 Civ. 8438 (ER), 2016 WL 1047079, at *5-*6 & n.6 (S.D.N.Y. Mar. 10, 2016). And *Abdell* approved $650 in <u>2015</u> for an experienced civil-rights solo practitioner in a lengthy and demanding § 1983 case. 2015 WL 898974, at *3.

In 2024, Ms. Bellantoni's hourly rate was set by the Honorable Arun Subramanian at $450 in *Taveras v. City of New York*, No. 20-CV-1200 (AS), 2024 WL 756361, at *1 (S.D.N.Y. Feb. 23, 2024). In assigning that hourly rate, Judge Subramanian reasoned that *Taveras* "did not result in a finding that any law was facially invalid" *Taveras*, at *2. The court's reasoning thus tied the rate to the posture and outcome of that particular case. *Taveras* was also resolved by way of Rule 68 Offer of Judgment and not—as here—by granting summary judgment to Plaintiff. Nor did *Taveras* involve court-awarded monetary damages — unlike this case, in which this Court has broken new ground by awarding monetary damages in a Second Amendment challenge.

Since *Taveras*, in addition to the successes in this case, Ms. Bellantoni has secured nationally recognized victories for the Second Amendment in the Ninth Circuit –*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) and *Baird v. Bonta*, 163 F.4th 723 (9th Cir. 2026)—and locally. *See,* Bellantoni Dec. ¶¶ 12-13. As this Court is aware, the Second and Ninth Circuits have been—and remain—the most resistant federal circuits to Second Amendment claims, making victories in those courts particularly probative of counsel's skill and expertise. The specialized nature of Ms. Bellantoni's practice has only intensified. The ongoing development of post-*Bruen* doctrine—including the Supreme Court's subsequent decisions in *United States v. Rahimi*, and the continuing circuit conflicts—demands a practitioner of Ms. Bellantoni's caliber and experience.

Where SDNY decisions continue to describe the current range for experienced civil-rights litigators as running roughly from $400 to $800, depending on experience and case demands, a rate of $550-650 fits comfortably within this body of law. It is above the standard rate for routine matters, but below the highest rates reserved for counsel whose cases involved the combination of lengthy complex litigation, trial, exceptional market proof, or all three.

### D. Ms. Bellantoni's Own SDNY Awards Show An Upward Trajectory

Ms. Bellantoni's prior awards are especially probative because they avoid apples-to-oranges comparisons. In 2019, Ms. Bellantoni was awarded $400 per hour in another civil-rights action, *Cocuzza v. Rockland County*, No. 17-CV-8217, 2019 WL 6498915, at *5 (S.D.N.Y. Nov. 7, 2019), report and recommendation adopted, 2019 WL 6498092 (S.D.N.Y. Dec. 2, 2019) and an hourly rate of $450 per hour in *Taveras*.

This case provides a stronger basis for a higher rate based on the degree of success obtained– the most important factor in determining the reasonableness of a fee award. *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996). At a minimum, *Cocuzza* and *Taveras* establish a baseline floor. Ms. Bellantoni's achievements in this litigation, her added experience since those decisions, her record in the Ninth Circuit, success in other firearm-related matters [Bellantoni Dec. at ¶¶ 2013], and the current SDNY market support a rate of $550–$650 as credible, restrained, and consistent with prevailing market rates in this District.

## POINT III. THE HOURS EXPENDED ARE REASONABLE

Plaintiff's billing records are contemporaneous and satisfy the Second Circuit's recordkeeping requirement. *See Scott v. City of New York*, 643 F.3d 130 (2d Cir. 2010); *New York State Ass'n for Retarded Child., Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983). They identify the date, the hours expended, and the nature of the work performed. *See,* Bellantoni Declaration at Exhibit 1.

The hours are reasonable in light of the actual course of the case: pre-suit defense of Second Amendment rights in administrative appeal of denial of Plaintiff's firearm license applications, pleadings, summary judgment, opposing the City's post-judgment appeal and, *inter alia,* fee litigation. The question is not whether the same outcome might have been achieved with fewer hours in hindsight, but whether a reasonable attorney in counsel's position would have devoted comparable time to each task as it arose. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As the Second Circuit has held, "the district court does not play the role of an uninformed arbiter" in reviewing hours claimed — rather, it evaluates the work in light of the specific circumstances of the case. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998). Any reduction must be grounded in specific identified entries that were excessive when made, not in a retrospective judgment that the litigation could have been more streamlined. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

### *Travel Time- Hourly Rate Reduction of 50%*

Plaintiff has exercised billing judgment by reducing the amount sought for time spent traveling by 50%. Courts in this Circuit regularly reduce attorneys' fees by 50 percent for travel time. *See, e.g., Shanfa Li v. Chinatown Take-OutInc.*, No. 16 Civ. 7787, 2019 WL 3715086, at *7 (S.D.N.Y. Aug. 7, 2019), aff'd, 812 F. App'x 49 (2d Cir. 2020); *B.C. v. New York City Dep't of Educ.*, No. 21 Civ. 2840, 2022 WL 3214374, at *7 (S.D.N.Y. Aug. 9, 2022) (the court "abides by recent decisions" and assigns a 50% reduction in hourly rate to travel time). Travel time in this matter encompasses a total of four round-trip appearances in New York City–a district court conference, oral argument in the Second Circuit, Plaintiff's deposition at the New York City Law Department, and the district court trial on damages—a total of **11.8 hours**. Half of the hourly rate assessed by the Court should be applied to the 11.8 hours of travel time.

### *Prelitigation Legal Work*

Time spent representing Plaintiff in the underlying administrative licensing process until the determination by the Appeals Unit and review of same—May 31, 2019 through December 9, 2019—is subject to attorney's fees under § 1988. Attorney's fees may be awarded for work done in a prior administrative proceeding which was both useful and of a type ordinarily necessary to advance the subsequent § 1988 civil rights litigation. *Cullen v. Fliegner*, 18 F.3d 96, 105–06 (2d Cir. 1994) quoting, *N. Carolina Dept. of Transp. v. Crest St. Community Council, Inc.,* 479 U.S. 6, 15 (1986); *Webb v. Bd.*

*of Educ. of Dyer Cnty.*, 471 U.S. 234, 243 (1985). Whether such fees are for work that is "useful and of a type ordinarily necessary" to advance the civil rights litigation depends on the circumstances of the case and of the prior administrative proceeding. *Raja v. Burns*, 43 F.4th 80, 92 (2d Cir. 2022). To the extent the work was performed in related administrative proceedings, that time is compensable because it reflects the discrete portion of the work product that was useful and ordinarily necessary to advance the later § 1983 litigation. *Raja*, 43 F.4th at 92.

Given the particular nexus between the work performed in appealing the disapprovals of Plaintiff's handgun and rifle/shotgun licenses under the very unconstitutional regulations challenged here–the foundation of the federal litigation—this narrow and targeted legal work should be reimbursable. All efforts made and time spent as reflected on the time sheets for the dates encompassing May 31, 2019 through December 9, 2019 consist of legal work and communications of the type ordinarily necessary to advance the subsequent § 1988 civil rights litigation – a total of **2.5 hours**.

### *Administrative Tasks Performed by Counsel*
Should this Court determine that any of the time sheet entries performed by Ms. Bellantoni reflect non-attorney, paralegal work, Plaintiff requests an hourly rate of $200 be applied. Hourly rates for paralegals in this district range between $150 and $200. *See Profex, Inc. v. Westchester Fire Ins. Co, et al.* No. 22 CIV. 00015 (NSR)(JCM), 2026 WL 789519, at *7 (S.D.N.Y. Jan. 27, 2026) (awarding $190 hourly rate for paralegal with 20 years of experience).

### POINT IV. COSTS ARE RECOVERABLE

Plaintiff requests reimbursement for litigation costs in the amount of **$1,692.60.** Plaintiff incurred the following costs: $402 SDNY filing fee; $1,025.60 Appellate printing costs in connection with the City's interlocutory appeal; and $265 for legislative research services in connection with the City's interlocutory appeal. Such costs were reasonably incurred in prosecuting this action and are recoverable as part of the § 1988 award. *See,* Bellantoni Declaration at Ex. 2.

### POINT V.  FEES INCURRED IN PREPARING THIS MOTION ARE RECOVERABLE

Time reasonably spent preparing and defending a fee application is compensable. *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999). Plaintiff therefore seeks fees for **11.65  hours** reasonably spent preparing this motion, as reflected in Exhibit 4 to the Bellantoni Declaration.

### POINT VI.  PRE-JUDGMENT INTEREST

In a suit to enforce a federal right, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court. *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998). Under the court's analysis, the award should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court. *Wickham Contracting Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 833–34 (2d Cir. 1992). The relative equities may make prejudgment interest inappropriate when the defendant acted innocently and had no reason to know of the wrongfulness of his actions, when there is a good faith dispute between the parties as to the existence of any liability, or when the plaintiff himself is responsible for the delay in recovery. *Wickham*

*Contracting*, 955 F.2d at 834–35. None of those circumstances exist here.

The speculative nature of the damages in question will always be relevant to a sound decision on a consideration of whether prejudgment interest should be awarded. However, the proper inquiry must include the other factors we have identified: analysis of the pertinent statute and its purposes; the need to fully compensate the injured party; fairness and the relative equities; and the specific circumstances of the parties and of the case. The degree of speculation must then be considered in light of these other factors to determine the propriety of prejudgment interest. *Wickham Contracting*, 955 F.2d at 836.

Plaintiff's damages consisted of monetary awards for emotional injury and financial damages for expenditures required to secure his home –having been denied the right to be armed with a handgun, rifle, or shotgun by the City. As this Court observed, it "is hornbook law that the victim of tortious conduct is entitled to recover for expenditures reasonably made ... to avert the harm threatened." *Srour,* at \*8 quoting, Restatement (Second) of Torts § 919(1) (2025); *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2015) (citing Restatement (Second) of Torts §§ 903, 912 (1977) for "general tort principles"). "Srour's expenditures were reasonable and sufficiently connected to the harm, or 'evil,' caused by the unconstitutional denial of his Second Amendment right." *Id.* quoting, *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999).

In a § 1983 action, prejudgment interest is warranted where necessary to make the plaintiff whole for actual past losses caused by the constitutional deprivation. Because § 1983's basic purpose is to compensate for actual injury, and because prejudgment interest is an element of complete compensation running from accrual until judgment, the Court should award prejudgment interest on plaintiff's past financial damages caused by the unlawful denial of his firearm license –as with backpay, these particular financial damages "have been ascertainable with precision." *Wickham Contracting*, 955 F.2d at 833–35. *See also*, *Connor v. Ulrich*, 153 F. Supp. 2d 199, 205 (E.D.N.Y. 2001) (awarding prejudgment interest for damages awarded for medical expenses and loss of earnings, which are "a specific, ascertainable sum that represents an economic injury"); *see also Santander Consumer USA, Inc. v. City of Yonkers,* No. 22-CV-8870 (KMK), 2025 WL 2673773.

The date of accrual of Plaintiff's prejudgment interest should be assessed as of the date that the NYPD License Division, Appeals Unit made its final determination to uphold the initial disapprovals of Plaintiff's firearms license applications: November 7, 2019 [DE 28 at ¶ 9]. *See Santander Consumer,* at \*1 (granting prejudgment interest from the date of the taking of the plaintiff's vehicle, which "serves to fully compensate Santander for its inability to utilize its property").

Plaintiff's prejudgment interest should be calculated using "the average interest" paid on a one-year United States Treasury Bill for the years between 2019 and 2026. *See Santander Consumer*, at \*2 citing *Sanderson v. Leg Apparel LLC*, No. 19-CV-8423, 2024 WL 898654, at \*5 (S.D.N.Y. Mar. 1, 2024); *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007); *Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686, 2023 WL 5831129, at \*3 (E.D.N.Y. Sept. 8, 2023).

As a benchmark, the official annual average **1-year Treasury bill** rates were **1.99% in 2019, 0.36% in 2020, 0.10% in 2021, 2.68% in 2022, 4.84% in 2023, 4.48% in 2024, and 3.76% in 2025**. *See* Board of Governors of the Federal Reserve System (US), **1-Year Treasury Bill Secondary Market Rate, Discount Basis** [RIFSGFSY01NA], FRED, Federal Reserve Bank of St. Louis (annual series)

(noting that the annual figures are **"Averages of daily figures"**).[1] The average of those annual rates is **2.60%**. (Average calculated from the cited official figures.)

2.60% of Plaintiff's financial damages award of $56,626.25 equals $1,472.28 in prejudgment interest per year. Calculating that on a yearly basis, Plaintiff would be entitled, should the Court exercise its discretion accordingly, to prejudgment interest in the amount of $9,476.67.[2]

Plaintiff is not seeking prejudgment interest related to his emotional damages award, which is a non-economic, unliquidated sum and not an amount that could be considered "withheld" by the City.

**<u>CONCLUSION</u>**

The above reductions demonstrate that Plaintiff's request is already trimmed to reflect what a reasonable paying client would bear. It is therefore reasonable to award Plaintiff fees for **197.38 hours** of Ms. Bellantoni's attorney time assessed at a rate between $550 and $650, **11.8 hours of travel time** at a 50% reduction in the hourly rate assessed by the Court, litigation costs in the amount of **$1,692.60**, prejudgment interest in the amount of **$9,476.67**, and attorney's fees for the **12.95 hours** spent making the instant motion.

Thank you for the Court's consideration.

Very truly yours,

*Amy L. Bellantoni*
Amy L. Bellantoni

cc:    Aimee Lulich, Esq. (via ECF)

---

[1] https://fred.stlouisfed.org/data/RIFSGFSY01NA
[2] $56,626.25 \times 0.026 \times 2349 = 9,476.67$